68

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

| | |
|---|---|
| FEDERAL TREASURY ENTERPRISE SOJUZPLODOIMPORT and OBSCHESTVO S OGRANICHENNOI OTVETSTVENNOST'YU CHERNOGOLOVSKII ZAVOD ALKOGOL'NOI PRODUKCII "OST-ALCO", | 04 Civ. 08510 (GBD) |
| Plaintiffs, | |
| -against- | **SECOND AMENDED COMPLAINT** |
| SPIRITS INTERNATIONAL N.V.; SPI SPIRITS LIMITED; SPI GROUP SA; YURI SHEFLER; ALEXEY OLIYNIK; ALLIED DOMECQ INTERNATIONAL HOLDINGS B.V.; and ALLIED DOMECQ SPIRITS & WINES USA, INC., d/b/a ALLIED DOMECQ SPIRITS, USA, | **JURY TRIAL DEMANDED** |
| Defendants. | |

---

RECEIVED 2005 MAY -4 P 5:48 U S DISTRICT COURT SDNY

Plaintiffs Russian Federal Treasury Enterprise Sojuzplodoimport ("FTE") and Obschestvo s Ogranichennoi Otvetstvennost'yu Chernogolovskii Zavod Alkogol'noi Produkcii "Ost Alco" ("Ost"), by and through their undersigned counsel Quinn Emanuel Urquhart Oliver & Hedges, LLP, bring this action against defendants for declaratory relief, injunctive relief, and damages under the laws of the United States and the State of New York, as follows:

## NATURE OF THE ACTION

1.     This action arises out of the defendants' unlawful misappropriation and unauthorized commercial exploitation in the United States of STOLICHNAYA and related trademarks in connection with the sale of vodka and other spirits (the "Marks"), as well as the unauthorized commercial exploitation in the United States of the STOLICHNAYA labels, which are protected by copyright under the Berne Convention (the "Copyright"). The Marks were developed in the 1960s and the Copyright was developed in the 1950s. Until 1992, the Marks were owned by a state entity in the Soviet Union that, in effect, licensed the rights to use the Marks and the Copyright in the United States to PepsiCo, Inc., which had the exclusive right to import STOLICHNAYA vodka into the United States until 2001. Beginning in 1992, the

Russian rights to the Marks and Copyright were purportedly transferred from the state entity to a series of private entities, the names of which were virtually indistinguishable from that of the state entity and rightful owner, the All-Union Foreign Economic Association Sojuzplodoimport ("VVO-SPI").

2.     Upon information and belief, Defendants Yuri Shefler ("Shefler") and Alexey Oliynik ("Oliynik") owned, directed, and dominated entities based in Cyprus and the Netherlands that purported to sell the rights to use the Marks in the United States to defendant Allied Domecq International Holdings, B.V., ("ADIHBV") while purporting to license the right to import "STOLICHNAYA" vodka to defendant Allied Domecq Spirits & Wines USA, Inc., d/b/a Allied Domecq Spirits, USA ("Allied Domecq Spirits & Wines USA, Inc." or "AD USA"). To keep their promises to the Allied Domecq entities, Shefler and Oliynik persuaded PepsiCo that the series of entities they created were successors-in-interest to the rights of the Soviet Union in the Marks.  When the PepsiCo license agreement expired in 2001, Shefler and Oliynik directed PepsiCo to assign the mark registrations to Allied Domecq International Holdings, thus completing the theft.

3.     After learning of Shefler's and Oliynik's illegal actions, the Russian government initiated a series of actions in the Russian courts to recover the STOLICHNAYA Marks.[1]  The Russian courts determined that the purported assignments of the Marks were null and void.  By this action, Plaintiffs seek to have the duly issued orders of the Russian courts recognized and applied to prevent the unlawful use of, and to restore to their rightful owner, the

---

[1] As used herein, the term "STOLICHNAYA mark" refers to the STOLICHNAYA mark registered in 1969 with the United States Patent and Trademark Office pursuant to Certificate of Registration No. 0865462; the phrase "STOLICHNAYA Marks" refers to the group of trademarks assigned by VVO-SPI to PepsiCo, Inc. ("PepsiCo") on June 19, 1991; the phrase "STOLICHNAYA Second Generation Marks" refers to the group of trademarks assigned to ADIHBV by PepsiCo, Inc., on January 1, 2001; and the phrase "STOLICHNAYA-Related Marks" refers to marks registered or sought to be registered in the United States by ADIHBV that use the STOLICHNAYA or STOLI roots or that otherwise closely mirror the STOLICHNAYA Second Generation Marks.

STOLICHNAYA Second Generation Marks, as well as the STOLICHNAYA Copyright, in the United States.

4.    The following illustrates the unlawful corporate transfers of the Marks from 1992 to the present:



In 1992, state entity VVO Sojuzplodoimport ("VVO-SPI") was directed by an insider to invest in a newly created entity, Foreign Economic Joint Stock Company Sojuzplodoimport ("VAO-SPI").

In 1993, VAO-SPI expelled VVO-SPI but took its assets, including its trademarks, by rewriting its corporate charter to claim that it was the successor-in-interest to the state entity. The trademarks were usurped by presenting the Russian trademark office with a corporate charter which contained the *ipse dixit* assertion that VAO-SPI was the legal successor to VVO-SPI; on that basis the Russian Trademark Office granted registration of the marks to VAO-SPI.

In 1996, VAO-SPI was transformed into Foreign Economic Closed Joint Stock Company Sojuzplodoimport ("VZAO-SPI"); it then claimed to be the successor-in-interest to VAO-SPI and to VVO-SPI.

In 1997, defendants Yuri Shefler and Alexey Oliynik gained control of VZAO-SPI and "sold" the marks for $300,000 to Closed Auction Company Sojuzplodimport (missing the letter "o" between the "d" and "i" in "Sojuzplodoimport") ("ZAO-SPI"), which they had caused to be unlawfully incorporated.

In 1999, Shefler and Oliynik caused ZAO-SPI to sell the rights to the marks to another company they owned, defendant Spirits International, N.V., of the Netherlands.

In 2000, Spirits International agreed to cause the assignment of the U.S. mark registrations to defendant Allied Domecq International Holdings, and defendant SPI (the abbreviation of "Sojuzplodoimport") Spirits agreed to supply "STOLICHNAYA" vodka to defendant Allied Domecq Spirits & Wines USA commencing in January 2001.

In January 2001, ZAO and Spirits International caused PepsiCo, Inc. to assign the U.S. mark registrations to defendant Allied Domecq International Holdings.

5.    Plaintiffs seek declaratory relief with respect to the STOLICHNAYA Second Generation Marks and the Copyright, injunctive relief and damages for acts of fraud, unjust enrichment, misappropriation, statutory and common law unfair competition, trademark infringement, trademark dilution, and copyright infringement in violation of the laws of the

United States and the laws of New York State. Plaintiffs also seek cancellation of trademarks infringing FTE's STOLICHNAYA Second Generation Marks.

## JURISDICTION AND VENUE

6.      This Court has jurisdiction under 28 U.S.C. §§ 1331 and 1338, and supplemental jurisdiction under 28 U.S.C. § 1367(a). As to Defendants Spirits International N.V., SPI Spirits Limited, Allied Domecq International Holdings B.V., SPI Group SA, and Allied Domecq Spirits & Wines USA, Inc., venue lies in this district under 28 U.S.C. § 1391(b)-(c). As to Defendants Shefler and Oliynik, venue lies in this district pursuant to 28 U.S.C. § 1391(d).

7.      Upon information and belief, each defendant is, directly or indirectly, transacting business within New York State and this District that involves the use of the STOLICHNAYA Second Generation Marks.

8.      Each defendant has, directly or indirectly, committed tortious acts within and/or without the state of New York with respect to the use and purported ownership of the STOLICHNAYA Second Generation Marks and the STOLICHNAYA Copyright, which acts have caused injury to plaintiffs within the State.

9.      In addition, upon information and belief, each defendant, through its business transactions and other activities concerning the STOLICHNAYA Second Generation Marks and the STOLICHNAYA Copyright, derives substantial revenue from the consumption of goods in this State and through interstate and international commerce, and through such conduct expects, or should reasonably expect, its or his acts to have consequences in this State. Defendants have directed and continue to direct millions of liters of vodka into the United States, annually, resulting in tens of millions of dollars in sales. Upon information and belief, a substantial part of such sales takes place in the State of New York.

10.     Defendants' unlawful activities are being conducted pursuant to a November 15, 2000 contract for the assignment of the STOLICHNAYA Second Generation Marks among Defendants ADIHBV, AD USA, Spirits International NV and SPI Spirits (Cyprus)

Limited, which specifically provides that, "This Agreement shall be construed in accordance with and governed by the laws of the State of New York." Thus, by signing the Agreement, Defendants explicitly consented to jurisdiction in the Southern District of New York. Further, the Deed of Assignment itself, which is attached as Exhibit C to the Agreement, was executed in the State of New York; reflects that the Assignor had its principal place of business in Purchase, New York; and contains a further consent to jurisdiction in the State of New York.

## PARTIES

11.     Plaintiff FTE is an economic entity of the Russian Federation organized and existing under the laws of Russia, with its principal place of business in Moscow, Russia. FTE is the rightful owner of the STOLICHNAYA Second Generation Marks, including related marks, and the STOLICHNAYA Copyright in the United States and elsewhere in the world, including Russia.

12.     Plaintiff Ost is a corporation organized and existing under the laws of Russia, with its principal place of business in Chernogolovka, Noginsk District, Moscow Region, Russian Federation. Ost is the licensed manufacturer of STOLICHNAYA vodka. Ost exports to the United States for sale here super premium vodka, distilled and bottled in the Russian Federation, including, without limitation, the very highly regarded JEWEL OF RUSSIA brand vodka.

13.     Upon information and belief, defendant Spirits International, N.V. ("Spirits International") is a corporation organized and existing under the laws of the Netherlands, with its principal place of business in Curaçao, Netherlands Antilles. Upon information and belief, Spirits International is a subsidiary of SPI Group SA, and part of the SPI Spirits Group ("SPI Group"), a group of companies owned or controlled by defendants Shefler and Oliynik and based in Switzerland.

14.     Upon information and belief, defendant SPI Group SA is a corporation organized and existing under the laws of Switzerland, with its principal place of business in Geneva, Switzerland. SPI Group SA has claimed ownership of the trademarks at issue and has

sought to enforce its purported rights therein by sending cease-and-desist letters to entities in the United States that it believed were infringing its purported rights. The SPI Group is a wholesale and retail alcohol distribution network that owns alcohol distilleries and has business interests in agriculture, finance, and real estate.

15.    Upon information and belief, defendant SPI Spirits Limited ("SPI Spirits") is a corporation organized and existing under the laws of Cyprus, with its principal place of business in Cyprus.

16.    Upon information and belief, defendant Allied Domecq International Holdings, B.V. ("ADIHBV") is a corporation organized and existing under the laws of the Netherlands, with its principal place of business in Breda, Netherlands.

17.    Upon information and belief, defendant Allied Domecq Spirits & Wines USA, Inc. is a corporation organized and existing under the laws of the State of Michigan, with its principal place of business in the State of Connecticut. AD USA is licensed to do business in New York by the Alcoholic Beverage Control State Liquor Authority; it sells liquor and wine at wholesale, pursuant to a Class 203 License; and it maintains offices at 565 Taxter Road, Elmsford, New York 10523.

18.    Upon information and belief, defendant Shefler is a non-resident alien. Upon information and belief, defendant Shefler has, directly or indirectly, transacted business in this District and/or committed acts of trademark infringement, trademark dilution, and/or other unlawful acts with respect to the STOLICHNAYA Second Generation Marks.

19.    Upon information and belief, defendant Oliynik is a non-resident alien. Upon information and belief, defendant Oliynik, has directly or indirectly, transacted business in this District and/or committed acts of trademark infringement, trademark dilution and/or other unlawful acts with respect to the STOLICHNAYA Second Generation Marks.

20.    Upon information and belief, other unnamed individuals and/or entities are and/or have acted as the agents, co-conspirators or joint venturers of defendants Shefler, Oliynik, Spirits International, SPI Group SA, and/or SPI Spirits Limited, and/or are the co-conspirators or

joint venturers of defendant ADIHBV and/or AD USA (the "ADIHBV Defendants"). Upon information and belief, each of the unnamed individuals and/or entities is acting in concert or participation with its principal, co-conspirator, or joint venturer to trade on plaintiffs' valuable intellectual property. Plaintiffs will amend this Complaint to add such individuals and/or entities as defendants when their names and capacities are ascertained.

21. Upon information and belief, at all relevant times mentioned in this Complaint, Spirits International, SPI Group SA, and SPI Spirits have been or are mere shells, instrumentalities, and/or conduits through which Shefler and Oliynik conduct, and have conducted, their unlawful activities. Shefler and Oliynik have directly managed, controlled and/or dominated the operations of Spirits International, SPI Group SA, and SPI Spirits. Upon information and belief, Spirits International, SPI Group SA, and SPI Spirits, are not separate legal entities from Shefler and Oliynik. Therefore, to avoid an inequitable result, Spirits International, SPI Group SA, and SPI Spirits should be regarded as the alter egos of Shefler and Oliynik. As such, hereinafter, Spirits International, SPI Spirits, SPI Group SA, Shefler, and Oliynik shall be referred to collectively as the "Shefler Defendants."

22. Upon information and belief, at all relevant times mentioned in this Complaint, defendants, and each of them, were acting in concert and active participation with each other in committing the wrongful acts alleged herein, and were the agents of each other and were acting within the scope and authority of that agency and with the knowledge, consent, and approval of one another.

## FACTUAL BACKGROUND

### Origin of the STOLICHNAYA Marks and the STOLICHNAYA Copyright

23. In Russian, "STOLICHNAYA" means "from the capital." It connotes unsurpassed quality. For decades, STOLICHNAYA brand vodka has been owned and exported either by the Soviet government or by the government of the Russian Federation, which succeeded the Soviet Union.

24.    In or about June 1966, the government of the Union of Soviet Socialist Republics ("U.S.S.R.") established the All-Union Association Sojuzplodoimport ("V/O-SPI"), a state-entity to regulate the importation and exportation of alcohol, fruits, vegetables, and other foods, including STOLICHNAYA brand vodka.

25.    In or about October 1969, the Soviet Foreign Trade Association registered the STOLICHNAYA Mark with the U.S.S.R.'s Committee for Inventions and Discoveries at the Council of Ministers. The STOLICHNAYA Mark received Registration No. 38388. Additionally, the Soviet Foreign Trade Ministry also registered a number of other vodka marks, including, but not limited to, the MOSKOVSKAYA Mark, which received Registration No. 38237.

26.    By January 1990, under the direction of the Soviet government, V/O-SPI held the rights to use dozens of vodka trademarks, including, but not limited to, the STOLICHNAYA and MOSKOVSKAYA marks.

**Evgeniy Sorochkin's Unlawful Hijacking of the STOLICHNAYA Marks**

27.    In or about January 1990, V/O-SPI was lawfully reorganized as the All-Union Foreign Economic Association Sojuzplodoimport ("VVO-SPI"). Thereafter, VVO-SPI held the rights to the STOLICHNAYA Marks.

28.    However, by September 1990, taking advantage of rapidly weakening governmental oversight and the escalating economic confusion within the country, the staff of VVO-SPI, led by its General Director, Evgeniy Filippovich Sorochkin ("Sorochkin"), conspired to make it appear that VVO-SPI (a state-controlled entity) had been lawfully transformed into a private joint stock company. He did so by creating a private joint stock company using a name substantially identical to VVO-SPI's name, and by later amending the corporate charter to reflect – falsely – that it was the successor to VVO-SPI.

29.    On or about December 26, 1991, in the midst of Sorochkin's efforts to misappropriate VVO-SPI's assets for his own benefit, the U.S.S.R was officially dissolved. In the political and economic chaos that ensued, much of the state-owned property was

8

misappropriated by criminals, corrupt "entrepreneurs," and others. According to the prestigious Analytic Center of the Russian Academy of Sciences, "55 percent of capital and 80 percent of voting shares [of privatized companies] were transferred, during privatization into the hands of domestic and foreign criminal capital."

30.     Russia's privatization process is perhaps the best modern example of Honore de Balzac's statement that "[b]ehind every great wealth, there is a crime." Upon information and belief, billion dollar enterprises were "hijacked" by their managers and/or directors for virtually nothing. Within Russia, the privatization process has been commonly referred to as "prikh-vatizatsiya," which comes from the Russian verbs meaning to "privatize" and to "grab."

31.     On or about January 20, 1992, realizing that the confusion gripping the Russian government provided the perfect opportunity to pursue his fraudulent scheme to seemingly transform VVO-SPI into a private company, thereby allowing the hijacking of VVO-SPI's assets, Sorochkin caused the Foreign Economic Joint Stock Company Sojuzplodoimport ("VAO-SPI") to be registered with the Moscow Registration Chamber.

32.     Upon information and belief, Sorochkin also appointed himself Chairman of the Board of Directors of VAO-SPI, even though he had never relinquished his position as General Director of VVO-SPI.

33.     In 1993, while serving as the chief officer of both VVO-SPI and VAO-SPI, Sorochkin included an *ipse dixit* recitation in VAO-SPI's corporate charter, which stated that: "VAO Sojuzplodoimport shall be the legal successor of VVO Sojuzplodoimport."

34.     On June 3, 1993, after its physical, monetary and other assets (including the STOLICHNAYA Marks) had been simply taken or usurped by VAO-SPI via the *ipse dixit* recitation added to its corporate charter, VVO-SPI was "expelled" from VAO-SPI by resolution of the General Meeting of VAO-SPI's Shareholders and its shares were given to TOO Implod, a company wholly owned by Sorochkin and certain VVO-SPI/VAO-SPI employees. Thereafter,

VAO-SPI claimed ownership of the STOLICHNAYA Marks. The Russian government received nothing in exchange for the vodka trademarks taken by VAO-SPI.

35.    Upon information and belief, VVO-SPI's shares in VAO-SPI were instead conveyed to TOO Implod, which was incorporated by members of the staff of VVO-SPI. Shortly thereafter, in or about September 1993, VAO-SPI's register of shareholders reflected the expulsion of VVO-SPI from the register of shareholders and TOO Implod's new ownership interest in VAO-SPI.

36.    As a result, Sorochkin, while serving as the chief officer of both VVO-SPI and VAO-SPI, was able to coordinate the theft of the state-owned assets of VVO-SPI, including the STOLICHNAYA Marks, by VAO-SPI.

37.    To consummate his fraudulent scheme within the Russian administrative process, Sorochkin primarily utilized two 1992 letters allegedly signed by the First Deputy Minister of the Ministry of Agriculture, Vladimir Scherbak. Scherbak's alleged letters did not conform to proper clerical procedure and did not have the addressee's name. In addition, although the letters were executed on purported Ministry of Agriculture letterhead, that letterhead did not conform to the form of letterhead used by the Ministry of Agriculture as of the date of the letters. In or about October 2003, after conducting an extensive investigation, the Ministry of Agriculture found that Scherbak's 1992 letters were forgeries. Scherbak subsequently confirmed that finding, declaring that he had never signed the two letters.

38.    The two forged letters stated that: (1) VAO-SPI was a legal entity in the Russian Federation and had the right to export Russian vodka for sale in the United States using the STOLICHNAYA Marks; (2) VVO-SPI was reorganized in compliance with relevant Russian laws; and (3) VAO-SPI was the sole legal successor to VVO-SPI.

39.    The representation that VAO-SPI was the legal successor of VVO-SPI was untrue. Sorochkin registered VAO-SPI as a *new* company with the Moscow Registration Chamber while VVO-SPI *continued* in existence. As a matter of Russian law, VAO-SPI was not a legal successor to VVO-SPI because VVO-SPI, the predecessor, continued to exist. In fact, in

or about July 2001, the Moscow Chamber of Registration registered the transformation of VVO-SPI to Federal State Unitary Enterprise Foreign Economic Association Sojuzplodoimport ("FGUP VO SPI"). A true and correct copy of the Charter of Federal State Unitary Enterprise Sojuzplodoimport Foreign Economic Association is attached as Exhibit A, and is incorporated herein as though set forth at length.[2]

40. Further, pursuant to both Russian statutory law and executive decree, the transformation of a state enterprise (*e.g.*, VVO-SPI) into an enterprise of any other organizational and legal form, such as a private joint stock company (*e.g.*, VAO-SPI), could occur only if the transformation were approved by the Ministry of State Property of the Russian Soviet Federated Socialist Republic ("RSFSR") and executed in compliance with the applicable privatization statute (*i.e.* the July 3, 1991 statute "On Privatization of Government and Municipal Enterprises in the RSFSR"). However, the Ministry of State Property of the RSFSR never approved any transformation of VVO-SPI, and VVO-SPI never complied with the privatization statute. Moreover, pursuant to Russian law, privatization could only be effective if the government were compensated for its interest in the enterprise being privatized. In the instant case, the government received no consideration for the alleged transformation of VVO-SPI into VAO-SPI.

41. Upon information and belief, in or about October 1992, Sorochkin filed at least one of the forged Scherbak letters with the Russian Federation Committee on Patents and Trademarks ("Rospatent"), a body equivalent to the United States Patent and Trademark Office. Rospatent was not authorized to examine the validity of documents submitted to it. Thus, without realizing that the document was a forgery, Rospatent declared that the foreign registrations for the STOLICHNAYA Marks belonged to VAO-SPI as the "full and rightful successor to VVO Sojuzplodoimport," and that the exclusive right to export Russian vodka using those Marks belonged to VAO-SPI.

---

[2] Exhibits A, F-L and O each include both a true and correct copy of the original document (in Russian) and an English translation. Within each of these respective Exhibits, the English version is included at Tab 1 and the Russian version is included at Tab 2.

42.    In or about October 1994, based upon the forged documents filed with its agency, Rospatent further concluded that the domestic (*i.e.* Russian) registrations of the STOLICHNAYA Marks also belonged to VAO-SPI.

**Yuri Shefler Supplants Sorochkin and Takes the STOLICHNAYA Marks**

43.    By April 1996, VAO-SPI was transformed into the Foreign Economic Closed Joint-Stock Company Sojuzplodoimport ("VZAO-SPI"). Sorochkin continued to perform the executive functions of VZAO-SPI until April 1997.

44.    In April 1997, Shefler became President of VZAO-SPI.

45.    In or about April 1997, Shefler was also elected as Chairman of the Board of Directors of VZAO-SPI. Thereafter, Shefler, Oliynik, and their agents who were appointed to key positions within that company, began exploiting the trademarks held by VZAO-SPI.

46.    Upon information and belief, in October 1997, two entities headed by persons acting under the direction and control of Shefler and Oliynik -- Intercatrin Group Corp. ("Intercatrin"), a mere shell Delaware corporation which no longer exists, and ZAO Eleri ("Eleri"), a Russian corporation -- incorporated a joint venture named Closed Auction Company Sojuzplodimport" (missing the letter "o" between the "d" and the "i" in "Sojuzplodoimport") ("ZAO-SPI").

47.    Eleri, which was also a shareholder of VZAO-SPI, held 98 percent of the shares of ZAO-SPI, while Intercatrin held the remaining 2 percent.

48.    Upon information and belief, Eleri was incorporated in Russia utilizing the lost passport of an alcoholic woman, Elena Kocherizkina ("Kocherizkina"). Detectives from the Ministry of Internal Affairs and the Moscow Prosecutor's Office have conducted an investigation and have not been able to locate her or her body. According to Eleri's corporate records, on or about May 14, 1996, Kocherizkina allegedly founded Eleri with 7,590,000 rubles in starting capital. However, in July 5, 1996, less than two months later, she allegedly resigned, without receiving any compensation, and simultaneously transferred her ownership interest in the company to O.R. Gusev and I.Y. Kazartseva, also without any compensation.

49.     Upon information and belief, Intercatrin was a shell corporation founded solely to promote Shefler's and Oliynik's fraudulent scheme to gain control over the STOLICHNAYA Marks and move them overseas.  Upon information and belief, Intercatrin no longer exists.

50.     Upon information and belief, Sorochkin, while still President of VZAO-SPI, refused to consent to the sale of the STOLICHNAYA Marks.  In response, Shefler and Oliynik had Sorochkin discharged from his position with VZAO-SPI.

51.     On or about December 26, 1997, only two months after its incorporation, ZAO-SPI allegedly "purchased" the worldwide rights to the STOLICHNAYA Marks from VZAO-SPI for a mere 1.7 million rubles, which was then the equivalent of approximately $300,000.  Upon information and belief, the worldwide rights to the STOLICHNAYA Marks were then worth a minimum of $400,000,000.

52.     Shefler's and Oliynik's December 26, 1997 "purchase" was actually a belated Christmas present to themselves.  At the time of the transaction, Shefler served as the Chief Expert and Chairman of the Board of Directors of VZAO-SPI, while Oliynik served as Vice President and the Secretary of the Board of Directors.  Upon information and belief, Shefler and Oliynik also held indirect control over ZAO-SPI at the time of the "purchase," through their influence over Evgeniy Shubin ("Shubin"), ZAO-SPI's General Director from October 15, 1997, to May 28, 1998.  Shubin is Shefler's brother-in-law.

53.     Upon information and belief, at the time of the "purchase," Shefler and Oliynik also exercised control over Vladimir Andreenkov ("Andreenkov"), the General Director of Eleri, ZAO-SPI's controlling shareholder.  To illustrate, just a few months before the "purchase," Oliynik ceded his position as the General Director of Eleri to Andreenkov on August 1, 1997.  Thereafter, on or about May 28, 1998, Andreenkov nominated Oliynik as the new General Director of ZAO-SPI.

54.     After transferring the trademarks from VZAO-SPI to ZAO-SPI, Shefler and Oliynik orchestrated a series of corporate transformations involving VZAO-SPI and the

STOLICHNAYA Marks.  In or about March 1998, VZAO-SPI was reorganized into the Foreign Economic Open Joint-Stock Company Sojuzplodoimport ("VOAO-SPI").  In or about December 1999, VOAO-SPI was further reorganized into the Open Joint-Stock Company Plodovaya Kompania ("OAO Plodovaya Kompania").

55.     Upon information and belief, throughout the series of above-mentioned corporate transformations, Shefler and Oliynik gutted VZAO-SPI.  For example, on October 17, 1997, VZAO-SPI employed 137 persons.  By August 2, 1999, it employed only 14 persons.

56.     In the late 1990s, Shefler and Oliynik also began to shift their alleged worldwide rights to the STOLICHNAYA Marks to a company outside Russia.  Upon information and belief, in or about April 1999, ZAO-SPI sold its alleged worldwide rights to the STOLICHNAYA Marks to Spirits International.

57.     As set forth above, VZAO-SPI was controlled by Shefler and Oliynik when the Marks were transferred to ZAO-SPI, and ZAO-SPI was an affiliate of the SPI Group (*e.g.* the SPI Group Web site's home page states, "S.P.I. Group, which includes ZAO Sojuzplodimport . . . .").  Therefore, when VZAO-SPI sold its alleged rights in the STOLICHNAYA Marks to ZAO-SPI, Shefler and Oliynik were effectively transferring the Marks between their own entities.

58.     The Russian government (the successor to the Soviet government and true owner of the STOLICHNAYA Marks) never received any part of the (far below market value) $300,000 payment for the STOLICHNAYA Marks.  In fact, the December 26, 1997 transaction was the first time that money changed hands in connection with the transfer of the STOLICHNAYA Marks.

59.     Shefler has since claimed that the Russian Federation received consideration when VZAO-SPI assumed a debt owed by VVO-SPI.  In fact, what occurred was that VVO-SPI had been left without assets by VAO-SPI and creditors brought claims against VAO-SPI's legal successor, VZAO-SPI.  Under Shefler's direction, VZAO-SPI resisted paying the debts, arguing that VAO-SPI was never responsible for them.  Russian and Latvian courts

14

unsurprisingly concluded that, because VZAO-SPI held itself out as a legal successor to VVO-SPI, it was liable for the debts and was ordered to pay them.

      60.    When ZAO-SPI sold its alleged rights in the STOLICHNAYA Marks to Spirits International, Shefler and Oliynik once again transferred marks between their own entities, and the Russian government once again received no part of the purchase price.

      61.    In summary, Shefler and Oliynik (as Chairman of the Board and Vice President, respectively) controlled VZAO-SPI when the marks were transferred to ZAO-SPI on December 26, 1997. While the marks were held by ZAO-SPI, Shefler and Oliynik maintained firm control over that entity – first, indirectly, via Shubin and Andreenkov; then, directly, via Oliynik's position as General Director of that entity. Finally, Shefler and Oliynik controlled Spirits International when the marks were transferred to it on or about April 12, 1999, in that Shefler was its founder and controlling shareholder.

## Transfers of the STOLICHNAYA Marks

→ Dec. 26, 1997 →      → April 12, 1999 →

| VZAO | ZAO | Sprits International |
|------|-----|---------------------|
| Shefler (Chairman of the Board; Chief Expert) | Shubin (General Director and Shefler's brother-in-law) | Shefler (founder and controlling shareholder) |
| Oliynik (Secretary of the Board; Vice President) | Oliyinik (General Director) | |

## Yuri Shefler's Criminal Charges

      62.    Born as Yury Urasov in October 1967, Shefler has used at least three names. By the late 1980s he was already known as Yury Shabalin and, in 1994, he changed his name yet again, to Yuri Shefler.

      63.    In or about April 2002, the Prosecutor General of the Russian Federation filed criminal charges against Shefler for threatening to murder Vladimir Loginov, the newly appointed General Director of FTE. Upon information and belief, Shefler is currently wanted in the Russian Federation for threats to commit murder. Upon information and belief, he is also wanted by Interpol for questioning.

64.     On or about March 26, 1997, Vladimir A. Yamnikov, the General Director of Open Joint-Stock Company Moskovsky Zavod Kristall, one of the largest vodka distilleries in Moscow and shareholder in VAO-SPI, who was first a business associate and then a competitor of Shefler, died under suspicious circumstances of internal bleeding.  Upon information and belief, Yamnikov's family members claim that Yamnikov was poisoned by Shefler.  Prior to Mr. Yamnikov's death, on or about December 12, 1996, another prominent businessman, Moskovski Zavod Kristall's Deputy General Director, A. A. Zhelko, died under suspicious circumstances of internal bleeding.  Also, on the night of August 8-9, 2002, Jacob Tilipman, a Russian vodka entrepreneur and a shareholder in VZAO-SPI, was murdered shortly after filing a lawsuit contesting the transfer of the STOLICHNAYA Marks that were transferred by Shefler from VZAO-SPI to ZAO-SPI.

**The PepsiCo Agreement and the Use of the STOLICHNAYA Marks in the United States**

65.     In or about April 1967, V/O-SPI filed a trademark application for the STOLICHNAYA Mark in the United States.  In or about February 1969, the primary STOLICHNAYA Mark was registered with the United States Patent and Trademark Office pursuant to Certificate of Registration No. 0865462.

66.     In or about March 1969, V/O-SPI assigned all U.S. rights in the STOLICHNAYA Mark to Kraus Bros. & Co. ("Kraus") and designated Monsieur Henri Wines, Ltd. ("MHW"), a Kraus subsidiary, as the authorized U.S. importer of STOLICHNAYA vodka. In addition, MHW was designated as V/O-SPI's representative for the U.S. trademark application.

67.     In 1973, V/O-SPI entered into an agreement with PepsiCo, Inc. ("PepsiCo") regarding the importation of Russian vodka in the United States (the "PepsiCo Agreement").  Pursuant to that agreement, PepsiCo exported its Pepsi-Cola brand syrup to the U.S.S.R. and, in return, received the right to import STOLICHNAYA vodka (and other related vodkas) into the United States.  At or about that time, PepsiCo acquired Kraus so that it could use the STOLICHNAYA Mark in the United States.

16

68.    In or about 1977, PepsiCo divested itself of MHW, but retained the ownership of the STOLICHNAYA Mark (and other related marks).

69.    Despite the language in the PepsiCo Agreement that PepsiCo was the exclusive "owner" of the STOLICHNAYA Mark (and other related marks), PepsiCo was not permitted to sell the rights to or assign those marks to entities other than affiliates. Furthermore, until its amendment in February 1992, paragraph 8 of the PepsiCo Trademark Assignment Agreement permitted the government of the U.S.S.R. and, later, the government of the Russian Federation, to request the reassignment of the STOLICHNAYA Marks to V/O-SPI (or its legal successors) at will. PepsiCo was, in fact, a mere licensee of the STOLICHNAYA Marks.

70.    Throughout the time that the PepsiCo Agreement was in effect (it expired in 2001), PepsiCo heavily marketed and invested in the STOLICHNAYA brand. Due in part to PepsiCo's marketing efforts and investment, STOLICHNAYA vodka came to be considered a premium vodka in the United States.

71.    While the PepsiCo Agreement was in effect, the STOLICHNAYA Second Generation Marks became famous and acquired secondary meaning within the United States, as illustrated by advertising expenditures, unsolicited media coverage of product, attempts to plagiarize the marks, and the length and exclusivity of the marks' use. For example, upon information and belief, PepsiCo spent millions of dollars advertising the STOLICHNAYA Second Generation Marks in the United States. A search of Westlaw's "usnews" database for articles referring to STOLICHNAYA or related marks prior to January 1, 2001, yields more than 2,000 hits.

72.    The immense quantity of STOLICHNAYA brand vodka sold in the United States further illustrates the popularity and public recognition of the STOLICHNAYA Second Generation Marks in the United States by January 1, 2001. Upon information and belief, STOLICHNAYA brand sales alone constituted a significant percentage of total vodka sales in the United States.

**Shefler's and Oliynik's "Hijacking" of the U.S. STOLICHNAYA Marks**

73.    After acquiring rights to distribute STOLICHNAYA vodka in the United States, PepsiCo also registered several other Russian vodka marks.

74.    In 1983, PepsiCo reassigned to V/O-SPI (the initial state entity mark owner) the STOLICHNAYA mark, as well as its pending application for the registration of another STOLICHNAYA mark.  In 1991, PepsiCo assigned to VVO-SPI (the second, legitimate state entity) several other of its Russian vodka trademarks.

75.    In or about June 1991, VVO-SPI "reassigned" to PepsiCo all its rights, title, and interest in the U.S. to almost two dozen vodka marks, including, but not limited to, the STOLICHNAYA Mark (*i.e.,* the STOLICHNAYA Marks).  The "reassignment" was subject to a reversionary right in favor of VVO-SPI, thus, making PepsiCo a licensee of said marks.

76.    Realizing the importance of obtaining the rights to the U.S. marks, Sorochkin, and later Shefler and Oliynik, represented to PepsiCo that their respective companies were the legal successors of VVO-SPI.

77.    On or about February 3, 1994, VAO-SPI entered into an agreement with PepsiCo concerning the U.S. registrations of the STOLICHNAYA Marks in the United States.  A true and correct copy of that agreement, Contract No. 643\01860302\42001-04A, is attached as Exhibit B, and is incorporated herein as though set forth at length.

78.    In or about February 1998, SPI Spirits, which was responsible for the export of vodka from Russia and which was a member of the SPI Group, signed an addendum to the February 3, 1994 contract between VAO-SPI and Pepsi-Cola International, Ltd.  A true and correct copy of the Addendum to Contract No. 643\01860302\42001-04A is attached as Exhibit C, and is incorporated herein as though set forth at length.

79.    In or about November 2000, ADIHBV and AD USA entered into Trademark Supply and Distribution Agreement ("the "ADIHBV Agreement") with Spirits International and SPI Spirits.  A true and correct copy of portions of the ADIHBV Agreement is attached as Exhibit D, and is incorporated herein as though set forth at length.

80.    Pursuant to the ADIHBV Agreement, Spirits International appointed ADIHBV as the exclusive "owner" of all STOLICHNAYA Second Generation Marks in the United States.  Further, pursuant to a Deed of Assignment, effective January 1, 2001, Spirits International diversified and caused PepsiCo to "assign" all of its U.S. rights, title and interest in the STOLICHNAYA Second Generation Marks to ADIHBV.  The reassigned Marks listed in the Deed of Assignment included the following:

| **Mark** | **Registration No.** |
| --- | --- |
| STOLICHNAYA | 865,462 |
| STOLICHNAYA | 1,291,454 |
| STOLICHNAYA | 2,317,475 |
| STOLI | 1,244,735 |
| STOLICHNAYA RUSSIAN VODKA | 1,852,552 |
| STOLICHNAYA KAFYA | 2,155,523 |
| STOLICHNAYA LIMONNAYA VODKA | 2,334,080 |
| STOLICHNAYA LIMONNAYA | 2,339,463 |
| STOLICHNAYA LIMONNAYA VODKA | 2,334,079 |
| STOLICHNAYA OHRANJ | 2,291,831 |
| STOLICHNAYA OHRANJ | 2,233,190 |
| STOLICHNAYA OHRANJ | 1,988,911 |
| STOLI PERSIK | 2,189,745 |
| STOLICHNAYA STOLI PERSKI | 2,339,689 |
| STOLICHNAYA STOLI RAZBERI | 2,204,355 |
| STOLI RAZBERI | 2,175,465 |
| STOLICHNAYA STRASBERI | 2,202,991 |
| STOLI STRASBERI | 2,205,863 |
| STOLI VANIL | 2,192,600 |
| STOLI ZINAMON | 2,192,681 |
| STOLICHNAYA GOLD (application) | 75/184,282 |

81.    Notwithstanding language in the ADIHBV Agreement stating that ADIHBV is the "exclusive" owner of the STOLICHNAYA Second Generation Marks, ADIHBV is not permitted to sell the rights in the Marks or assign the Marks to entities other than affiliates. Further, pursuant to that agreement, ADIHBV is not permitted to keep the goodwill attributable to the Marks.  And, at the conclusion of the ADIHBV Agreement, ADIHBV is required to

reconvey all its rights, title, and interest in the Marks to Spirits International. In fact, in an August 6, 2004 letter to a U.S. company, defendant SPI Group SA held itself and its subsidiary, Spirits International, out as the true owners of the STOLICHNAYA Second Generation Marks. A true and correct copy of this letter is attached as Exhibit E, and is incorporated herein as though set forth at length. Accordingly, ADIHBV is, in effect, a licensee of the Marks and Spirits International or SPI Group SA is, in effect, the licensor.

82.     Upon information and belief, ADIHBV has since registered or sought to register other trademarks similar to or belonging to the same families of marks as the STOLICHNAYA Second Generation Marks, to which Spirits International also retains reversionary rights.

83.     Upon information and belief, when the ADIHBV Agreement was signed, both the ADIHBV Defendants and the Shefler Defendants were aware that Spirits International did not have good title to the STOLICHNAYA Second Generation Marks.

84.     In fact, just eleven days prior to ADIHBV's acceptance of the assignment of the STOLICHNAYA Second Generation Marks, pursuant to its agreement with Spirits International (through assignment from PepsiCo), a Russian court issued a final judgment adverse to Spirits International's legal chain of title to these marks. Upon information and belief, the ADIHBV Defendants were well aware of the December 21, 2000 Russian judgment (holding that VAO-SPI was not a legal successor to VVO-SPI) when ADIHBV accepted the assignment of the STOLICHNAYA Second Generation Marks on January 1, 2001.

85.     Upon information and belief, the ADIHBV Agreement was intentionally structured so that ADIHBV paid very little for the actual "assignment" of the Marks. Upon information and belief, ADIHBV wanted to minimize its financial exposure from a potential future lawsuit by the Russian Federation, and thus negotiated to make royalty payments to Spirits International instead of paying a substantial fee for the "assignment" of the STOLICHNAYA Second Generation Marks.

86.     Further, upon information and belief, all parties to the ADIHBV Agreement were aware that the Russian Federation would eventually seek to recover its Marks. For example, Paragraph 26 of the ADIHBV Agreement was specifically negotiated to provide for such an eventuality, setting forth the parties' obligations "[i]n the event that . . . the government of the Russian Federation" or "any agency or instrumentality of the government of the Russian Federation . . . institutes a suit . . . against AD and/or Spirits alleging AD's title to Trademarks or SPI NV's reversionary interest in the Trademarks is for any reason invalid . . . ."

87.     Likewise, the Registration Statement and the Annual Reports of Allied Domecq PLC (the parent company of defendant Allied Domecq Spirits & Wines USA, Inc.), filed with the United States Securities and Exchange Commission ("Form/s 20-F"), expressly disclosed that "SPI Spirits and the Russian government are currently involved in a dispute over the trademark rights to STOLICHNAYA," and that "there is a risk" that the Russian government could take action that would prevent the Shefler Defendants from fulfilling their contractual obligations.

88.     Upon information and belief, subsequent to the execution of the ADIHBV Agreement, and pursuant to its terms, the ABIHBV Defendants, with the assistance and cooperation of the Shefler Defendants, have sold, distributed, and/or advertised within New York substantial quantities of products unlawfully infringing upon plaintiffs' rights to the STOLICHNAYA Second Generation Marks, and have derived substantial revenue therefrom.

**ADIHBV's Use of the STOLICHNAYA Mark and the STOLICHNAYA Copyright**

89.     In the United States, ADIHBV advertises its STOLICHNAYA Vodka as "Russian Vodka," "Genuine Russian Vodka," a "Product of Russia," "Imported Russian Vodka," and "Distilled in Russia." Further, the centerpiece of defendants' STOLICHNAYA label is a representation of the famous Moscow Hotel, previously located in the heart of Moscow and right next to the Kremlin, which has long served as a symbol of Russia to the West.

90.    Pursuant to Russian law, "Russian Vodka" must be made with Russian water and Russian wheat and distilled in Russia, and must meet purity and quality standards established by Russian law.

91.    Allied Domecq Spirits & Wines USA imports purported STOLICHNAYA vodka sold to it by SPI Spirits.

92.    The Shefler defendants have purchased the Balzams plant in Latvia and SPI Spirits now admittedly manufactures and bottles its vodka in Latvia.  SPI Spirits has admitted in numerous disclosures to the news media that its purported STOLICHNAYA vodka is actually made in Latvia.  Therefore, the vodka imported into the United States for distribution by Allied Domecq Spirits & Wines USA is not "Genuine Russian Vodka," or a "Product of Russia," but, is rather, "Genuine Latvian Vodka" and a "Product of Latvia."

93.    Further, "Russian Vodka" must comply with Russian legislation, GOST R 51355-99, which regulates "Vodkas and special vodkas," and must be manufactured according to an approved chemical composition.

94.    Upon information and belief, the purported STOLICHNAYA vodka manufactured in the Balzams plant does not comply with the GOST R 51355-99 standards.  Thus, even if SPI Spirits' Balzams plant received its vodka directly from Russia, and only bottled it in Latvia, such vodka would still not meet the legal requirements necessary to market it as "Russian Vodka" or "genuine Russian vodka."

**Russian Court Proceedings Resulting in the Russian Recovery of the STOLICHNAYA Marks**

95.    The Russian judiciary is divided into three branches:  The courts of general jurisdiction; the arbitration (commercial) court system; and the Constitutional Court.  The arbitration court system has three levels: arbitration courts of first instance; arbitration courts of appeals instance; and the Supreme Court of Arbitration.  Arbitration courts hear cases involving business disputes between private legal entities, and between private legal entities and the state.

96.     Following its receipt of a February 2000 Investigation Report from the Ministry of State Property, the Russian government concluded that VVO-SPI could be yet another victim of Russia's troubled transition process during which state-owned assets had fallen into the hands of corrupt "entrepreneurs."  It immediately commenced several investigations into the complex web of fraudulent transactions, forgeries of government records and corporate fraud which lay behind SPI Group's acquisition of the STOLICHNAYA Marks, and eventually filed suit.

97.     In or about November 2000, the Deputy Prosecutor General of the Russian Federation commenced an action in the Court of Arbitration of Moscow (First Instance) to partially invalidate the charter of OAO Plodovaya Kompania on the basis that it was not the ultimate successor of VVO-SPI.

98.     In its defense, OAO Plodovaya Kompania presented falsified evidence, including several 1992 certifications allegedly signed by the First Deputy Minister of the Ministry of Agriculture, Vladimir Scherbak, and the First Deputy Minister of Foreign Economic Relations, Vladimir Shibaev.  Those documents falsely stated that VAO-SPI was the legal successor to VVO Sojuzplodoimport and had the right to export Russian vodka to the United States.

99.     Scherbak has since signed a declaration confirming that the certifications presented by Plodovaya Kompania were forgeries.  In that declaration, Scherbak stated that he had never signed any such Certifications and that the signatures on the certifications were counterfeit.

100.     In addition, the authenticity of the letter signed by Vladimir Shibaev has been called into question.  Shibaev's letter was not on file with the Records Office of the Administrative Department of the Ministry of Economic Development and Trade of Russia. Because Shefler and Oliynik had ordered that VAO-SPI's corporate archives be destroyed (they were purportedly destroyed in a mysterious "flood," caused by a leaking pipe, in a building guarded around the clock), the Court of Arbitration was unable to search VAO-SPI's corporate

23

archives to see whether it had copies of the certifications in its possession. In any event, Russian law did not provide the Ministry of Foreign Economic Relations with the authority to issue opinions with respect to successions between legal entities. Thus, Shibaev's letter could not be and was not valid.

101.    On or about December 21, 2000, after reviewing all the evidence, the Court of Arbitration of Moscow declared that Article 2, Paragraph 2 of the OAO Plodovaya Kompania charter was invalid and that OAO Plodovaya Kompania was not the legal successor to VVO-SPI. The Court held that:

> Establishment of an enterprise by entering into a foundation
> agreement excludes its establishment by reorganizing any other
> enterprise, as these are two different ways of setting up an
> enterprise [i.e. they are mutually exclusive]. As transformation of
> one enterprise into another means cessation of existence for the
> reorganized enterprise, the fact that in the aforementioned
> documents on the establishment of VAO Sojuzplodoimport, VVO
> Sojuzplodoimport is described as one of the founders and still
> legally exists to date, means that the founders of VAO
> Sojuzplodoimport actually set up a new legal entity having nothing
> to do with VVO Sojuzplodoimport. Consequently, as that new
> legal entity [i.e. VAO-SPI] was not and could not be a legal
> successor of VVO Sojuzplodoimport, the statement in the
> defendant's charter on such legal succession is unlawful.

102.    The Court then issued a monetary judgment against Plodovaya Kompania. A true and correct copy of the ruling of the Court of Arbitration of Moscow (First Instance) is attached as Exhibit F, and is incorporated herein as though set forth at length.

103.    Thereafter, Plodovaya Kompania appealed to the Court of Arbitration in Moscow (Appeals Instance). In or about February 2001, after reviewing the record, the Court of Arbitration (Appeals Instance) erroneously concluded that the Deputy Prosecutor General, who had brought the action on behalf of the state, had failed to state who was the plaintiff at trial. For that reason, combined with the fact that a public prosecutor is not authorized to act by himself on behalf of the state, the Court of Arbitration (Appeals Instance) ordered that the ruling of the Court of Arbitration (First Instance), declaring Plodovaya Kompania's charter invalid and awarding damages, be quashed. A true and correct copy of the ruling of the Arbitration Court of Moscow (Appeals Instance) is attached as Exhibit G, and is incorporated herein as though set forth at length.

104.    The Deputy Prosecutor General then appealed to the Presidium, a division of Russia's highest commercial court, the Supreme Court of Arbitration of the Russian Federation. On or about October 16, 2001, the Presidium of the Supreme Court of Arbitration of the Russian Federation reversed the Court of Arbitration of Moscow (Appeals Instance) and held that: "[i]n accordance with Article 41, Part 1 of the Code of Arbitration Procedure of the Russian Federation, the public prosecutor is authorized to bring an action to a court of arbitration for defending the state and public interests."

105.    Further, the Presidium of the Supreme Court of Arbitration affirmed the lower court decision and concluded that: "[a]s VAO Sojuzplodoimport was established as a result of foundation [as a new entity] but not transformation [of an existing entity, *i.e.*, VVO-SPI], the first instance court's conclusion on invalidity of the provision of that company's charter pursuant to which it is a legal successor of VVO Sojuzplodoimport is correct." A true and correct copy of the ruling of the Presidium of the Supreme Court of the Russian Federation is attached as Exhibit H, and is incorporated herein as though set forth at length.

106.    On October 26, 2001, following the Presidium's ruling, Rospatent re-registered the STOLICHNAYA Marks in the name of the Ministry of Agriculture of the Russian Federation.

107.     Shortly thereafter, the Public Prosecutor's Office further explained its legal contentions when it brought an action in the Moscow Court of Arbitration to declare the purported December 12th, 1997 assignment of 17 of the STOLICHNAYA Marks -- SOVIET SPARKLING; STARKA; YUBILEYNAYA; KUBANSKAYA; ZUBROVKA; STOLICHNAYA; RUSSKAYA; OKHOTNICHYA; PERTSOVKA; MOSKOVSKAYA; LIMONNAYA; KREPKAYA; STOLOVAYA; SIBIRSKAYA; BALTISKAYA; KRISTAL; and SPI -from VZAO-SPI to ZAO-SPI, as well as the January 12, 1998 addendum to that assignment, null and void.

108.     On January 30, 2002, the Court of Arbitration of Moscow (First Instance) held that because VZAO-SPI was not a legal successor of VVO-SPI, it could not assign any of the STOLICHNAYA Marks to ZAO-SPI.  Consequently, that court declared that both the assignment of the rights in the STOLICHNAYA Marks from VZAO-SPI to ZAO-SPI, as well as the January 12, 1998 addendum thereto, were null and void.  A true and correct copy of the ruling of the Court of Arbitration of Moscow in the Name of the Russian Federation Award is attached as Exhibit I, and is incorporated herein as though set forth at length.

109.     On March 28, 2002, the January 30, 2002 award was affirmed by the Court of Arbitration of Moscow (Appeals Instance).  A true and correct copy of the ruling of the Court of Arbitration of Moscow (Appeals Instance) is attached as Exhibit J, and is incorporated herein as though set forth at length.

**The Russian Government Establishes New Entities to Recover the STOLICHNAYA Marks**

110.     As set forth above, in or about July 2001, the Moscow Chamber of Registration registered the transformation of VVO-SPI to FGUP VO SPI.  However, even though VVO-SPI, known today as FGUP VO SPI, remains in existence, it has no current claim to the Marks.  The Marks have always been owned by either the Soviet government or the government of the Russian Federation which succeeded the Soviet Union.

111.     In December 2001, Plaintiff FTE was established by the Russian government.  A true and correct copy of the Government of the Russian Federation Order

No. 1741 is attached as Exhibit K, and is incorporated herein as though set forth at length.  In April 2002, Vladimir Loginov was appointed General Director of FTE.

112.    After the litigation regarding the STOLICHNAYA Marks was concluded, the Government of the Russian Federation issued Decree No. 494, "On Trademarks of Alcoholic and Spirit Products," in July 2002, which ordered that 17 of the STOLICHNAYA Marks - SOVIET SPARKLING, STARKA, YUBILEYNAYA, KUBANSKAYA, ZUBROVKA, STOLICHNAYA RUSSKAYA, OKHOTNICHYA, PERTSOVKA, MOSKOVSKAYA, LIMONNAYA, KREPKAYA, STOLOVAYA, SIBIRSKAYA, BALTISKAYA, KRISTAL, and SPI - may be used by FTE in accordance with the procedures established by the Ministry of Agriculture and the Ministry of Property Relations of the Russian Federation.  A true and correct copy of the Decree No. 494 is attached as Exhibit L, and is incorporated herein as though set forth at length.

113.    On January 6, 2005, the Government of the Russian Federation issued Decree No. 6, "On Recovery and Protection of the Rights of the Russian Federation to the Trademarks Abroad," expressly confirming FTE's right to represent the interests of the Russian Federation in foreign courts on matters of recovery and protection of Russia's rights to trademarks for alcoholic products abroad.  A true and correct copy of Decree No. 6 is attached as Exhibit O, and is incorporated herein as though set forth at length.

## FIRST CLAIM

### (Declaratory Relief -- 28 U.S.C. § 2201(a))

### (Against All Defendants)

114.    Plaintiffs repeat and reallege each and every allegation of paragraphs 1 through 113, above, as though fully set forth at length.

115.    An actual controversy exists between Plaintiffs and Defendants with respect to ownership of the STOLICHNAYA Second Generation Marks in the United States. Plaintiff FTE and the Shefler Defendants each contend they are the rightful owner of the

STOLICHNAYA Second Generation Marks. ADIHBV and AD USA contend they are the rightful assignees from the Shefler Defendants of the STOLICHNAYA Second Generation Marks.

116.    Plaintiff FTE seeks to have the registrations of the STOLICHNAYA Second Generation Marks corrected on the Federal Register of the United States Patent and Trademark Office so that they reflect FTE's ownership.

117.    Upon information and belief, ADIHBV is not the rightful registrant of the STOLICHNAYA Second Generation Marks for at least the following reasons: (1) ADIHBV obtained the registrations of the STOLICHNAYA Second Generation Marks through fraud and wrongdoing; (2) the registrations of the STOLICHNAYA Second Generation Marks were obtained contrary to the requirements of 15 U.S.C. 1052(a); (3) ADIHBV knowingly accepted the assignment of the STOLICHNAYA Second Generation Marks on January 1, 2001, pursuant to its agreement with Spirits International (through assignment from PepsiCo), while fully aware of a final Russian court decision adverse to Spirits International's claim of ownership of said marks; and (4) ADIHBV had misrepresented and continues to misrepresent the source of the goods (*i.e.* vodka) being distributed under the STOLICHNAYA brand.

118.    Accordingly, Plaintiffs seek a declaration that FTE is the true owner of the STOLICHNAYA Second Generation Marks and a correction to the Federal Register to reflect FTE as the owner of said marks.

## SECOND CLAIM

### (Fraud)

### (By FTE Against All Defendants)

119.    Plaintiffs repeat and reallege each and every allegation of paragraphs 1 through 118, above, as though fully set forth at length.

120.    Intending to defraud the Russian Federation, the Shefler Defendants misrepresented to PepsiCo that they were the rightful owners of the STOLICHNAYA Second

Generation Marks and were the lawful successors-in-interest to VVO-SPI. At the time, the Shefler Defendants knew they were not the rightful owners of the STOLICHNAYA Second Generation Marks and were not the lawful successors-in-interest to VVO-SPI.

121.    The Shefler Defendants further instructed PepsiCo to assign the STOLICHNAYA Second Generation Marks to ADIHBV. In reliance on these misrepresentations and instructions, PepsiCo assigned the STOLICHNAYA Second Generation Marks to ADIHBV instead of their rightful owner, the Russian Federation.

122.    Upon information and belief, the ADIHBV Defendants participated in the Shefler Defendants' fraudulent scheme by engaging in a number of improper acts, including, but not limited to: (1) knowingly causing false information to be presented to PepsiCo, in reliance on which PepsiCo assigned the STOLICHNAYA Second Generation Marks to ADIHBV instead of to their rightful owner, the Russian Federation; (2) knowingly presenting and causing false information to be presented to the United States Patent and Trademark Office (the "PTO"), in reliance on which the PTO recorded the STOLICHNAYA Second Generation Marks as belonging to ADIHBV instead of to their rightful owner, the Russian Federation; and (3) knowingly accepting the assignment of the STOLICHNAYA Second Generation Marks on January 1, 2001, pursuant to its agreement with Spirits International (through assignment from PepsiCo), while aware of a final decision adverse to Spirits International's claim of ownership of said marks.

123.    Further, Defendants have engaged in a continuing fraud on the public by misrepresenting the source of the goods (*i.e.* STOLICHNAYA vodka) distributed in the United States, stating on the label that it is "Russian Vodka, "Genuine Russian Vodka," "Distilled in Russia, "Imported Russian Vodka, and a "Product of Russia," whereas, it is actually Latvian vodka. Moreover, the centerpiece of defendants' STOLICHNAYA label is a representation of the famous Moscow Hotel, previously located in the heart of Moscow and right next to the Kremlin, which has long served as a symbol of Russia to the West.

124.    As a result of Defendants' actions, Plaintiffs have been damaged in an amount to be proved at trial.  Additionally, Defendants' actions were in bad faith, in conscious disregard of Plaintiffs' rights, and performed with the intention of depriving FTE of its intellectual property rights.  Accordingly, Defendants' conduct merits, and Plaintiffs seek, an award of punitive damages in an amount sufficient to punish the Defendants and deter such conduct in the future.

## THIRD CLAIM

### (Unjust Enrichment)

### (Against the Shefler Defendants)

125.    Plaintiffs repeat and reallege each and every allegation of paragraphs 1 through 124, above, as though fully set forth at length.

126.    The Shefler Defendants have been unjustly enriched by virtue of their actions, including but not limited to causing the STOLICHNAYA Second Generation Marks to purportedly be assigned to ADIHBV for valuable consideration notwithstanding that the Shefler Defendants had and have no legal claim to those marks.  The Shefler Defendants have also entered into an agreement to provide ADIHBV with vodka and have earned a substantial profit from the sale of such vodka.  This unjust enrichment has come at Plaintiffs' expense in an amount to be proved at trial.

## FOURTH CLAIM

### (Misappropriation)

### (Against All Defendants)

127.    Plaintiffs repeat and reallege each and every allegation of paragraphs 1 through 126, above, as though fully set forth at length.

128.    By reason of the foregoing acts, Defendants have engaged in common law misappropriation.  FTE (and its predecessors and their licensee, PepsiCo) invested a substantial amount of time, effort and money to develop the STOLICHNAYA Second Generation Marks,

which are now extremely valuable. Defendants have improperly obtained the STOLICHNAYA Second Generation Marks without FTE's authorization.

129.    Defendants' conduct has caused and, unless enjoined, will continue to cause irreparable injury to Plaintiffs for which Plaintiffs have no adequate remedy at law. Plaintiffs are therefore entitled to a preliminary and permanent injunction restraining and enjoining Defendants, their agents, servants, and employees and all persons acting thereunder, in concert with, or on their behalf, from using, licensing, assigning other than to FTE, or selling the STOLICHNAYA Second Generation Marks.

130.    Additionally, Defendants' actions were in bad faith, in conscious disregard of Plaintiffs' rights, and performed with the intention of depriving FTE of its intellectual property rights. Accordingly, Defendants' conduct merits, and Plaintiffs seek, an award of punitive damages in an amount sufficient to punish Defendants and deter such conduct in the future.

## FIFTH CLAIM

### (Statutory and Common Law Unfair Competition)

### (Against All Defendants)

131.    Plaintiffs repeat and reallege each and every allegation of paragraphs 1 through 130, above, as though fully set forth at length.

132.    By reason of the foregoing, Defendants have been and are engaged in "unlawful, unfair or fraudulent business practices" in violation of § 349 of the New York General Business Law and acts of unfair competition in violation of the common law. Defendants' acts and practices are consumer-oriented; are misleading in a material way, as Defendants' STOLICHNAYA label provides a false description of the geographic origin of the goods (*i.e.* vodka) distributed under that label; and Plaintiffs have suffered a direct pecuniary injury as a result of these deceptive acts.

133.    Defendants' conduct has caused and, unless enjoined, will continue to cause irreparable injury to Plaintiffs for which Plaintiffs have no adequate remedy at law.

Plaintiffs are therefore entitled to a preliminary and permanent injunction restraining and enjoining Defendants, their agents, servants, and employees and all persons acting thereunder, in concert with, or on their behalf, from using, licensing, assigning other than to FTE, or selling the STOLICHNAYA Second Generation Marks.

134.    Additionally, Defendants' actions were in bad faith, in conscious disregard of Plaintiffs' rights, and performed with the intention of depriving FTE of its intellectual property rights. Accordingly, Defendants' conduct merits, and Plaintiffs seek, an award of punitive damages in an amount sufficient to punish Defendants and deter such conduct in the future.

## SIXTH CLAIM

### (Contributory Federal Trademark Infringement--15 U.S.C. § 1114(1))

### (Against the Shefler Defendants)

135.    Plaintiffs repeat and reallege each and every allegation of paragraphs 1 through 134, above, as though fully set forth herein.

136.    The Shefler Defendants are liable for contributory trademark infringement as the suppliers of infringing goods to the ADIHBV Defendants. The Shefler Defendants have supplied, and continue to supply, infringing products to the ADIHBV Defendants even after they knew, or had reason to know, that the ADIHBV Defendants are infringing FTE's STOLICHNAYA Second Generation Marks. Their knowledge is based on the Russian court rulings determining the rights in, and ownership of, the STOLICHNAYA Second Generation Marks.

137.    Upon information and belief, the Shefler Defendants are also liable for contributory trademark infringement because they intentionally induced the ADIHBV Defendants to infringe FTE's STOLICHNAYA Second Generation Marks.

138.    Defendants' wrongful conduct has caused and, unless enjoined, will continue to cause irreparable injury to Plaintiffs for which Plaintiffs have no adequate remedy at law. Plaintiffs are therefore entitled to a preliminary and permanent injunction restraining and

32

enjoining Defendants, their agents, servants, and employees and all persons acting thereunder, in concert with, or on their behalf, from using, licensing, assigning other than to FTE, or selling the STOLICHNAYA-Related Marks and their purported STOLICHNAYA Second Generation Marks.

139.    FTE is also entitled to the remedies set forth in 15 U.S.C. §§ 1117(a) and 1118.  Specifically, FTE is entitled to recover all profits earned by Defendants, all damages FTE has sustained, trebled, as well as the costs of this action.

### SEVENTH CLAIM
### (Contributory Federal Trademark Dilution--15 U.S.C. § 1125(c))
### (Against the Shefler Defendants)

140.    Plaintiffs repeat and reallege each and every allegation of paragraphs 1 through 139, above, as though fully set forth herein.

141.    The Shefler Defendants are liable for contributory trademark dilution as the suppliers of infringing goods to the ADIHBV Defendants.  The Shefler Defendants have supplied, and continue to supply, infringing products to the ADIHBV Defendants even after they knew, or had reason to know, that such products are being used to dilute FTE's trademarks. Their knowledge is based on the Russian court rulings determining the rights in, and ownership of, the famous STOLICHNAYA Second Generation Marks.

142.    Upon information and belief, the Shefler Defendants are also liable for contributory trademark dilution because they intentionally induced the ADIHBV Defendants to dilute FTE's famous STOLICHNAYA Second Generation Marks.

143.    Defendants' wrongful conduct has caused and, unless enjoined, will continue to cause irreparable injury to Plaintiffs for which Plaintiffs have no adequate remedy at law.  Plaintiffs are therefore entitled to a preliminary and permanent injunction restraining and enjoining Defendants, their agents, servants, and employees and all persons acting thereunder, in concert with, or on their behalf, from using, licensing, assigning other than to FTE, or selling the

STOLICHNAYA-Related Marks and their purported STOLICHNAYA Second Generation
Marks.

144.    FTE is also entitled to the remedies set forth in 15 U.S.C. §§ 1117(a) and
1118.  Specifically, FTE is entitled to recover all profits earned by Defendants, all damages FTE
has sustained, trebled, as well as the costs of this action.

## EIGHTH CLAIM

**(Contributory False Designation of Origin - 15 U.S.C. § 1125(a))**

**(Against the Shefler Defendants)**

145.    Plaintiffs repeat and reallege each and every allegation of paragraphs 1
through 144, above, as though fully set forth herein.

146.    The Shefler Defendants are liable for contributory false designation of
origin as the suppliers of infringing goods to the ADIHBV Defendants.  The Shefler Defendants
have supplied, and continue to supply, infringing products to the ADIHBV Defendants even after
they knew, or had reason to know, that such products were being used in a manner that is likely
to cause, and is calculated to create, confusion as to the origin and sponsorship of those goods, as
well as the affiliation between the ADIHBV Defendants and FTE.  The Shefler Defendants'
knowledge is based on the Russian court rulings determining the rights in, and ownership of, the
STOLICHNAYA Second Generation Marks.

147.    Upon information and belief, the Shefler Defendants are also liable for
contributory false designation of origin because they intentionally induced the ADIHBV
Defendants to use infringing goods in a manner that is likely to cause, and is calculated to create,
confusion as to the origin and sponsorship of those goods, as well as the affiliation between the
ADIHBV Defendants and FTE.

148.    Ost currently causes vodka to be sold under the JEWEL OF RUSSIA
mark, among others, in the United States.  Ost plans to sell vodka under the STOLICHNAYA
brand in the United States.  Plaintiffs have a direct pecuniary interest in the STOLICHNAYA

brand and are likely to suffer a commercial or competitive injury if Defendants are permitted to continue their use of the STOLICHNAYA Second Generation Marks in the United States.

149.    Defendants' conduct has caused irreparable harm to Plaintiffs, for which Plaintiffs have no adequate remedy at law.  Unless Defendants are restrained by this Court, these injuries to Plaintiffs will continue to occur.  Plaintiffs are, therefore, entitled to preliminary and permanent injunctions enjoining Defendants and their agents, servants, and employees, and all persons acting thereunder, in concert with, or on their behalf, from using, licensing, assigning other than to FTE, or selling the STOLICHNAYA-Related Marks and their purported STOLICHNAYA Second Generation Marks.

150.    FTE is also entitled to the remedies set forth in 15 U.S.C. §§ 1117(a) and 1118.  Specifically, FTE is entitled to recover all profits earned by Defendants, all damages FTE has sustained, trebled, as well as the costs of this action.

### NINTH CLAIM

**(Aiding and Abetting Fraud)**

**(By FTE Against ADIHBV Defendants)**

151.    Plaintiffs repeat and reallege each and every allegation of paragraphs 1 through 150, above, as though set forth at length.

152.    Upon information and belief, the ADIHBV Defendants knew of material facts constituting or evidencing the fraudulent scheme perpetrated by the Shefler Defendants.

153.    Notwithstanding this knowledge, the ADIHBV Defendants chose to aid and abet the fraud by, among other things: (1) knowingly allowing and facilitating the assignment of the STOLICHNAYA Second Generation Marks from PepsiCo to ADIHBV, instead of to their rightful owner, the Russian Federation; (2) knowingly allowing and facilitating the recording of such fraudulent assignment by the United States Patent and Trademark Office; and (3) deliberately turning a blind eye to facts within their possession or knowledge that were clear indications that there was fraud (*e.g.* the Russian court December 21, 2000 ruling adverse to Defendants' legal chain of title to said marks).

154.    As a result of Defendants' actions, Plaintiffs have been damaged in an amount to be proved at trial. Additionally, Defendants' actions were in bad faith, in conscious disregard of Plaintiffs' rights, and performed with the intent to deprive FTE of its intellectual property rights. Accordingly, Defendants' conduct merits, and Plaintiffs seek, an award of punitive damages in an amount sufficient to punish Defendants and deter such conduct in the future.

**TENTH CLAIM**

**(Cancellation of Marks--15 U.S.C. § 1119)**

**(Against the ADIHBV Defendants)**

155.    Plaintiffs repeat and reallege each and every allegation of paragraphs 1 through 154, above, as though fully set forth herein.

156.    FTE is the rightful owner of the STOLICHNAYA Second Generation Marks, which have acquired considerable value and have become well-known to the consuming public and trade in the United States and throughout the world.

157.    ADIHBV and AD USA have sought to register trademarks incorporating the STOLICHNAYA mark or derivatives thereof in the United States without the authorization or consent of FTE.

158.    The STOLICHNAYA-Related Marks used in interstate commerce by ADIHBV and AD USA are confusingly similar to FTE's STOLICHNAYA Marks and are intended to confuse and deceive consumers.

159.    For that reason, Plaintiffs seek the cancellation of any STOLICHNAYA-Related Marks that are already registered or may become registered, including the following:

| Mark | Serial No. | Filing Date | Reg. No. | Reg. Date | Status as of commence-ment of litigation |
|------|-----------|------------|----------|-----------|------------------------------------------|
| STOLICHNAYA | 78/208741 | 01/30/03 | | | Pending |

| Mark | Serial No. | Filing Date | Reg. No. | Reg. Date | Status as of commencement of litigation |
|------|-----------|-------------|----------|-----------|------------------------------------------|
| STOLICHNAYA | 76/367327 | 02/06/02 | | | Pending |
| STOLICHNAYA ELIT | 78/177458 | 10/23/02 | | | Pending |
| STOLICHNAYA ELIT | 78/153281 | 08/12/02 | | | Pending |
| STOLICHNAYA PREMYR | 78/325282 | 11/10/03 | | | Published |
| STOLICHNAYA CRANBERI | 78/150258 | 08/02/02 | | | Published |
| STOLI CRANBERI | 78/150200 | 08/02/02 | 2915969 | 01/04/05 | Registered |
| STOLICHNAYA CRANBERRY | 76/279998 | 07/03/01 | | | Pending |
| STOLI CRANBERRY | 76/279999 | 07/03/01 | | | Pending |
| STOLI CITRONA | 76/361601 | 01/22/02 | | | Published |
| STOLICHNAYA CITRONA | 76/361597 | 01/22/02 | | | Pending |
| STOLICHNAYA CITROS | 78/150196 | 08/02/02 | | | Published |
| STOLI LEMON | 76/279997 | 07/03/01 | | | Published |
| STOLICHNAYA KRIMSON | 76/306108 | 06/21/01 | | | Pending |
| STOLI KRIMSON | 76/306107 | 06/21/01 | | | Pending |

## ELEVENTH CLAIM

### (Federal Trademark Infringement—15 U.S.C. § 1114(1))

### (Against the ADIHBV Defendants)

160.    Plaintiffs repeat and reallege each and every allegation of paragraphs 1 through 159, above, as though fully set forth herein.

161.    The ADIHBV Defendants' unauthorized use of the STOLICHNAYA-Related Marks and their purported STOLICHNAYA Second Generation Marks constitutes trademark infringement and is likely to cause:  (a) confusion, deception and mistake among the

consuming public and trade; and (b) irreparable injury to FTE, including injury to its reputation and dilution of the distinctive high quality of its trademarks.

162.    Defendants' wrongful conduct has caused and, unless enjoined, will continue to cause irreparable injury to Plaintiffs for which Plaintiffs have no adequate remedy at law.  Plaintiffs are therefore entitled to a preliminary and permanent injunction restraining and enjoining Defendants, their agents, servants, and employees and all persons acting thereunder, in concert with, or on their behalf, from using, licensing, assigning other than to FTE, or selling their STOLICHNAYA-Related Marks and their purported STOLICHNAYA Second Generation Marks.

163.    Because Defendants' wrongful activities constitute trademark infringement, FTE is also entitled to the remedies set forth in 15 U.S.C. §§ 1117(a) and 1118. Specifically, FTE is entitled to recover all profits earned by Defendants, all damages FTE has sustained, as well as the costs of this action.

## TWELFTH CLAIM

### (Federal Trademark Dilution--15 U.S.C. § 1125(c))

### (Against the ADIHBV Defendants)

164.    Plaintiffs repeat and reallege each and every allegation of paragraphs 1 through 163, above, as though fully set forth herein.

165.    The famous STOLICHNAYA Mark was first federally registered in 1967 by a Soviet Government entity, V/O-SPI.  The famous STOLICHNAYA Second Generation Marks were used in interstate commerce through 2000 by FTE's licensee, PepsiCo, to identify the highest quality vodka products.  The STOLICHNAYA Second Generation Marks are extremely strong and well-recognized.  Accordingly, the STOLICHNAYA Second Generation Marks have become and continue to be famous within the meaning of § 43(c) of the Lanham Act, 15 U.S.C. § 1125(c).

166.    The ADIHBV Defendants' unauthorized use of STOLICHNAYA-Related Marks and their purported STOLICHNAYA Second Generation Marks in connection with their vodka products has diluted, and will continue to dilute, the distinctive quality of FTE's distinctive STOLICHNAYA Second Generation Marks in violation of 15 U.S.C. § 1125(c).

167.    Defendants' wrongful conduct has caused and, unless enjoined, will continue to cause irreparable injury to Plaintiffs for which Plaintiffs have no adequate remedy at law.  Plaintiffs are therefore entitled to a preliminary and permanent injunction restraining and enjoining Defendants, their agents, servants, and employees and all persons acting thereunder, in concert with, or on their behalf, from using, licensing, assigning other than to FTE, or selling the STOLICHNAYA-Related Marks and their purported STOLICHNAYA Second Generation Marks.

168.    FTE is also entitled to the remedies set forth in 15 U.S.C. §§ 1117(a) and 1118.  Specifically, FTE is entitled to recover all profits earned by Defendants, all damages FTE has sustained, trebled, as well as the costs of this action.

## THIRTEENTH CLAIM

### (False Designation of Origin —15 U.S.C. § 1125(a))

### (Against ADIHBV Defendants)

169.    Plaintiffs repeat and reallege each and every allegation of paragraphs 1 through 168, above, as though fully set forth herein.

170.    FTE is the rightful owner of the STOLICHNAYA Second Generation Marks, which have acquired considerable value and have become well-known to the consuming public and trade around the world.

171.    Ost currently causes vodka to be sold under the JEWEL OF RUSSIA mark, among others, in the United States.  Ost plans to sell vodka under the STOLICHNAYA brand in the United States.  Plaintiffs have a direct pecuniary interest in the STOLICHNAYA

brand and are likely to suffer a commercial or competitive injury if Defendants are permitted to continue their use of the STOLICHNAYA Second Generation Marks in the United States.

172.    ADIHBV and AD USA are using the STOLICHNAYA-Related Marks and their purported STOLICHNAYA Second Generation Marks in a manner that is likely to cause, and is calculated to create, confusion as to the origin and sponsorship of those goods, as well as the affiliation between the ADIHBV Defendants and FTE.  These actions by the ADIHBV Defendants have at all times been without FTE's consent.

173.    ADIHBV and AD USA, in commercial advertising and promotion, have misrepresented, and are continuing to misrepresent, the nature, characteristics, qualities, and geographic origin of the STOLICHNAYA-Related Marks and their purported STOLICHNAYA Second Generation Marks by advertising that the vodka sold under those marks is Russian Vodka, "Genuine Russian Vodka, a "Product of Russia," "Imported Russian Vodka" and "Distilled in Russia," when, in fact, it is Latvian vodka, manufactured and/or bottled in Latvia. Further, the centerpiece of defendants' STOLICHNAYA label is a representation of the famous Moscow Hotel, previously located in the heart of Moscow and right next to the Kremlin, which has long served as a symbol of Russia to the West.

174.    Defendants' conduct has caused irreparable harm to Plaintiffs, for which Plaintiffs have no adequate remedy at law.  Unless Defendants are restrained by this Court, these injuries to Plaintiffs will continue to occur.  Plaintiffs are, therefore, entitled to preliminary and permanent injunctions enjoining Defendants and their agents, servants, and employees, and all persons acting thereunder, in concert with, or on their behalf, from using, licensing, assigning other than to FTE, or selling the STOLICHNAYA-Related Marks and their purported STOLICHNAYA Second Generation Marks.

175.    FTE is also entitled to the remedies set forth in 15 U.S.C. §§ 1117(a) and 1118.  Specifically, FTE is entitled to recover all profits earned by Defendants, all damages FTE has sustained, trebled, as well as the costs of this action.

**FOURTEENTH CLAIM**

**(Copyright Infringement --17 U.S.C. § 106, et seq.)**

**(Against All Defendants)**

176.    Plaintiffs repeat and reallege each and every allegation of paragraphs 1 through 175, above, as though set forth at length.

177.    The STOLICHNAYA label was created by Valentin Aleksandrovich Yakovlev in the course of his job duties for the Moscow Art-Study Workshop of the Trust "Sojuzprodoformlenie" in 1953.  As the STOLICHNAYA label was created by Mr. Yakovlev in the course of his employment, any of Mr. Yakovlev's artistic contributions belonged to the Moscow Art-Study Workshop of the Trust "Sojuzprodoformlenie."  Upon information and belief, said rights were subsequently transferred to the government of the Soviet Union, on behalf of which the All-Union Chamber on Advertising and Drawing up of Goods ("Sojuzpichepromreklama") registered the STOLICHNAYA label as a copyright in late 1953.  A true and correct copy of the STOLICHNAYA label copyrighted in 1953 is attached hereto as Exhibit P, and is incorporated herein by reference.  Upon information and belief, substantially the same STOLICHNAYA label was subsequently used throughout the years and is still used by FTE today.  True and correct copies of FTE's current STOLICHNAYA label and the STOLICHNAYA label as it was used in 1980 are attached hereto as Exhibits M and Q, respectively, and are incorporated herein by reference.  The Russian Federation inherited the Soviet Union's assets, including the rights to the STOLICHNAYA label, and the Russian Federation subsequently exclusively licensed Ost to exploit the STOLICHNAYA label and copyright in the United States.

178.    The ADIHBV Defendants market and distribute vodka bottles (manufactured and supplied by the Shefler Defendants) with STOLICHNAYA labels strikingly similar to FTE's STOLICHNAYA labels protected by the STOLICHNAYA Copyright under the Berne Convention.  A true and correct copy of Defendants' imitation STOLICHNAYA label is

41

attached as Exhibit N, and is incorporated herein by reference. Defendants will continue to display and distribute products with STOLICHNAYA labels that are strikingly similar and virtually identical to FTE's STOLICHNAYA labels, unless enjoined from doing so. Defendants' display and sale of products with labels that are strikingly similar to Plaintiffs' copyright-protected STOLICHNAYA labels is and has been made without Plaintiffs' consent and for commercial purposes. Accordingly, Defendants have infringed Plaintiffs' copyright in the STOLICHNAYA labels.

179.    Plaintiffs have suffered serious injury as a result of the foregoing infringements of the STOLICHNAYA copyright. In addition, Plaintiffs will continue to suffer serious injury if Defendants are not enjoined from reproducing, distributing, displaying or otherwise using Plaintiffs' STOLICHNAYA labels. Plaintiffs have no adequate remedy at law for Defendants' continuing acts of infringement. Plaintiffs are therefore entitled to a preliminary and permanent injunction enjoining Defendants' acts of infringement and to recover their costs and reasonable attorneys' fees from Defendants pursuant to 17 U.S.C. § 505, in addition to their lost profits and actual damages or statutory damages of $150,000 for willful infringement.

### FIFTEENTH CLAIM

#### (Rectification of Register – 15 U.S.C. 1119)

#### (Against All Defendants)

180.    Plaintiffs repeat and reallege each and every allegation of paragraphs 1 through 179, above, as though set forth at length.

181.    ADIHBV is not the rightful registrant of the STOLICHNAYA Second Generation Marks for at least the following reasons: (1) ADIHBV obtained the registrations of the STOLICHNAYA Second Generation Marks through fraud and wrongdoing; (2) the registrations of the STOLICHNAYA Second Generation Marks were obtained contrary to the requirements of 15 U.S.C. 1052(a); (3) ADIHBV knowingly accepted the assignment of the STOLICHNAYA Second Generation Marks from Spirits International (via PespsiCo) on January 1, 2001, while fully aware of a final Russian court decision adverse to Spirits International's

claim of ownership of said marks; and (4) ADIHBV had misrepresented and continues to misrepresent the source of the goods (*i.e.* vodka) being distributed under the STOLICHNAYA brand.

182.    Accordingly, Plaintiffs seek an order from the Court to the Director, certifying that FTE is the true owner of the STOLICHNAYA Second Generation Marks and ordering a correction to the Federal Register to reflect FTE as the owner of said marks.

## PRAYER FOR RELIEF

Wherefore, FTE and Ost-Alco pray for judgment against Spirits International, SPI Spirits, SPI Group SA, ADIHBV, AD USA, Shefler, and Oliynik and each of them, as follows:

A.    On the First and Fifteenth Claims for Relief, for a declaration that FTE is the rightful owner of the STOLICHNAYA Second Generation Marks and for an order directed to the USPTO to correct the Principal Register to accurately reflect that ownership.

B.    On the Second, Third, Fourth, Fifth, and Ninth Claims for Relief, for Plaintiffs' damages, costs, attorneys' and investigators' fees, and punitive damages in an amount sufficient to punish Defendants and deter others.

C.    On the Third Claim for Relief, for an accounting of the Shefler Defendants' unjust profits.

D.    On the Fourth, Fifth, Eleventh, Twelfth, Thirteenth, and Fourteenth Claims for Relief, for preliminary and permanent injunctions prohibiting the ADIHBV Defendants from using, licensing, assigning other than to FTE, or selling their STOLICHNAYA-

Related Marks, their purported STOLICHNAYA Second Generation Marks, and the STOLICHNAYA Copyright.

        E.      On the Fourth, Fifth, Sixth, Seventh, Eighth, and Fourteenth Claims for Relief, for preliminary and permanent injunctions prohibiting the Shefler Defendants from using, licensing, assigning other than to FTE, or selling the STOLICHNAYA-Related Marks, their purported STOLICHNAYA Second Generation Marks, and the STOLICHNAYA Copyright.

        F.      On the Eleventh, Twelfth, and Thirteenth Claims for Relief, for Plaintiffs' damages, trebled, together with costs, attorneys' and investigators' fees, pursuant to 15 U.S.C. § 1117(b) as a result of the ADIHBV Defendants' wanton, deliberate, malicious, and willful conduct.

        G.      On the Sixth, Seventh, and Eighth Claims for Relief, for Plaintiffs' damages, trebled, together with costs, attorneys' and investigators' fees, pursuant to 15 U.S.C. § 1117(b) as a result of the Shefler Defendants' wanton, deliberate, malicious, and willful conduct.

        H.      On the Tenth Claim for Relief, a cancellation of the STOLICHNAYA-Related Marks.

        I.      On the Fourteenth Claim for Relief, for recovery of Plaintiffs' actual damages and defendants' profits or, in the alternative, for recovery by Plaintiffs of $150,000 in statutory damages for willful infringement, pursuant to 17 U.S.C. § 504, together with costs and attorneys' fees.

        J.      On all Claims, for such other and further relief as this Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiffs FTE and Ost-Alco respectfully demand trial by jury pursuant to Rule 38(b) of the Federal Rules of Civil Procedure.

Dated: New York, New York
      May 4, 2005

                    QUINN EMANUEL URQUHART
                      OLIVER & HEDGES, LLP

              By:
                    John B. Quinn (JQ-0716)
                    Jeffrey A. Conciatori (JC-6858)
                    Jonathan B. Oblak (JO-5340)

                    335 Madison Avenue
                    New York, New York 10017
                    (212) 702-8100

                    Attorneys for Plaintiffs
                    Federal Treasury Enterprise Sojuzplodoimport
                    "FTE" and Obschestvo S Ogranichennoi
                    Otvetstvennost'yu Chernogolovskii Zavod
                    Alkogol'noi Produkcii "Ost-Alco"

Of Counsel:

    Steven G. Madison (SM-3915)
    David W. Quinto (DQ-4592)

QUINN EMANUEL URQUHART
   OLIVER & HEDGES, LLP
865 South Figueroa Street, 10th Floor
Los Angeles, California 90017
(213) 443-3000