UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------x
FEDERAL TREASURY ENTERPRISE
SOJUZPLODOIMPORT, et al.,

                                                        MEMORANDUM DECISION
                          Plaintiffs,                   AND ORDER
                                                        04 CV 8510 (GBD)

                -against-


SPIRITS INTERNATIONAL N.V., et al,


                          Defendants.
------------------------------------------------------------------x
GEORGE B. DANIELS, District Judge:


        Plaintiffs Russian Federal Treasury Enterprise Sojuzplodoimport ("FTE") and

Obschestvo s Ogranichennoi Otvetstvennost'yu Chernogolovskii Zavod Alkogol'noi Produkcii

("Ost Alco") commenced this action, seeking declaratory and injunctive relief, and damages.

The defendants are Spirits International N.V., S.P.I. Spirits Limited, S.P.I. Group SA, Yuri

Shefler, Alexey Oliynik (collectively, "SPI Defendants"), and Allied Domecq International

Holdings B.V., and Allied Domecq Spirits & Wines USA, Inc., d/b/a Allied Domecq Spirits,

USA (collectively, "Allied Domecq Defendants").

## FACTUAL BACKGROUND

        In 2000, the Russian Government decided to re-nationalize the rights to STOLICHNAYA

trademarks and copyrights in Russia and abroad.  In December 2001, the Russian Federation

established plaintiff FTE to pursue this action.[1]  (Sec. Am. Compl., ¶111).  FTE is an economic

---

[1] FTE purportedly obtained its rights to certain STOLICHNAYA marks through Decree No. 494, "On Trademarks of Alcoholic and Spirit Products," issued by the Government of the Russian Federation in July 2002.  The decree ordered that 17 of the STOLICHNAYA marks, SOVIET SPARKLING, STARKA, YUBILEYNAYA, KUBANSKAYA, ZUBROVKA, STOLICHNAYA RUSSKAYA, OKHOTNICHYA, PERTSOVKA, MOSKOVSKAYA, LIMONNAYA, KREPKAYA, STOLOVAYA, SIBRSKAYA, BALTISKAYA, KRISTAL, and

entity of the Russian Federation organized and existing under the laws of Russia. (Id., ¶ 11).

Plaintiff Ost Alco, a Russian corporation, exports various vodkas distilled and bottled in the

Russia. Plaintiffs allege that FTE is the rightful owner of trademarks to certain

STOLICHNAYA marks in the United States. Defendants claim that Allied Domecq Holdings

International, B.V. ("Allied Domecq") is the rightful owner of, and that it possesses incontestible

rights to, the trademark.

Defendant Spirits International N.V. ("Spirits International") is a Netherlands

corporation. (Id., ¶ 13). Pursuant to a contract with Allied Domecq, Spirits International holds

reversionary rights to the STOLICHNAYA mark in the United States. (Id., ¶ 79, Ex. D).

Defendant S.P.I. Spirits (Cyprus) Limited ("S.P.I. Spirits") is a Cypriot corporation that exports

STOLICHNAYA vodka. (Id., ¶¶ 78, 91-92, 94). Defendant Allied Domecq Spirits and Wine

USA imports STOLICHNAYA vodka sold to it by S.P.I. Spirits. (Id., ¶ 91.). Both Spirits

International and S.P.I. Spirits are subsidiaries of Defendant S.P.I. Group SA, a Swiss holding

company ("S.P.I. Group"). (Id., ¶ 13). Defendant Yuri Shefler ("Shefler") is the Director and

majority shareholder of S.P.I. Group SA, and defendant Alexey Oliynik ("Oliynik") is an officer

and a member of the boards of directors of S.P.I. Group and S.P.I. Spirits. (Id., ¶ 78).

Around June 1966, the government of the Soviet Republic established the All-Union

Association Sojuzplodoimport ("V/O-SPI"). (Id., ¶ 24). V/O-SPI is a state-entity created to

---

SPI, may be used by FTE in accordance with the procedures established by the Ministry of
Agriculture and the Ministry of Property Relations of the Russian Federation. (Id., ¶ 112; Id., Ex.
L). On January 6, 2005, the Government of the Russian Federation issued Decree No. 6, "On
Recovery and Protection of the Rights of the Russian Federation to the Trademarks Abroad."
This decree purports to grant FTE the right to represent the interests of the Russian Federation in
foreign courts on matters of recovery and protection of Russia's rights to trademarks for
alcoholic products abroad. (Id., ¶ 113).

regulate the importation and exportation of fruits, vegetables, other foods, and alcohol, including STOLICHNAYA brand vodka.  (Id.).  About four years after its creation, V/O-SPI registered the primary STOLICHNAYA mark in the United States Patent and Trademark Office.  (Id., ¶ 25).  In Russian, the word "STOLICHNAYA" means "from the capital."  (Id., ¶ 88).  The illustration on the STOLICHNAYA label is a representation of the famous Moscow Hotel.  (Id., ¶ 89).

Shortly after the STOLICHNAYA registration, V/O-SPI assigned all United States rights in the primary STOLICHNAYA mark to Kraus Bros. & Co. ("Kraus").  (Id., ¶ 66).  V/O-SPI also designated Monsieur Henri Wines, Ltd. ("MHW"), a Kraus subsidiary, as the authorized United States importer of STOLICHNAYA vodka.  (Id.).  In addition, MHW was designated as V/O-SPI's representative for the United States STOLICHNAYA trademark application.  (Id.).  The Patent and Trademark Office gave the STOLICHNAYA primary mark Trademark Registration Number 865,462.  (Id., ¶¶ 24, 65).

In 1973, V/O-SPI entered into an agreement with PepsiCo, Inc. ("PepsiCo"), under which PepsiCo contracted to export its cola syrup to the U.S.S.R.  (Id., ¶ 67).  In exchange, V/O-SPI assigned to PepsiCo the right to import STOLICHNAYA vodka into the United States.  (Id.).  PepsiCo acquired Kraus to obtain the rights to use the primary STOLICHNAYA mark in the United States.[2]  (Id.).  In 1983, ten years later, PepsiCo reassigned to V/O-SPI the STOLICHNAYA mark.  (Id., ¶ 74).  Approximately eight years after the reassignment, V/O-SPI entered into an agreement ("June 1991 Agreement") assigning the United States rights in the

---

[2]Around 1977, PepsiCo divested itself of MHW, but retained the rights to the STOLICHNAYA mark.

STOLICHNAYA marks and other marks back to PepsiCo.[3]  (Id., ¶ 75).  Pursuant to its

provisions, if the agreement was not extended beyond its original term ending January 1, 2001,

PepsiCo would be required to immediately assign the STOLICHNAYA marks back to V/O-SPI.

(Id., ¶ 69).  The agreement also provided in paragraph 8 that PepsiCo would assign the marks

back to V/O-SPI at any time if the Soviet Union so requested.  (Id., ¶¶ 69, 75).

Around January 1990, V/O-SPI was reorganized into the All-Union Foreign Economic

Association Sojuzplodoimport ("VVO-SPI").  (Id., ¶ 27).  Thereafter, VVO-SPI held the rights to

the STOLICHNAYA marks.  Evgenily Filippovich Sorochkin ("Sorochkin") was the General

Director of VVO-SPI.  (Id., ¶ 27).  In January 1992, the Foreign Economic Joint Stock Company

Sojuzplodoimport ("VAO-SPI") was registered with the Moscow Registration Chamber.  (Id., ¶

31).  VAO-SPI's corporate charter stated that it was the legal successor to VVO-SPI.  (Id., ¶ 33).

Sorochkin was appointed as chairman of the board of directors of VAO-SPI.  (Id., ¶ 32).

On February 6, 1992, VAO-SPI and PepsiCo entered into an addendum to the June 1991

Agreement, which recited that VAO-SPI "is the successor in interest" to VVO-SPI and deleted

paragraph 8 of the June 1991 Agreement.  (Id., ¶ 69).[4]  On February 3, 1994, VAO-SPI entered

into another agreement with PepsiCo ("February 1994 Agreement"), which recited that VAO-SPI

was the owner of the United States STOLICHNAYA marks.  (Id., ¶ 77).  The February 1994

--------

[3]Plaintiffs' submit that the 1991 Agreement was an assignment by name only.  Plaintiffs
argue that the 1991 Agreement possessed all of the characteristics of a license, therefore, the
Court should find that the agreement constituted a license.  (Id., ¶ 75).

[4]Throughout the time the 1991 Agreement was in effect, PepsiCo heavily marketed and
invested in the STOLICHNAYA brand.  Due in part to PepsiCo's marketing efforts and
investment, STOLICHNAYA vodka came to be considered a premium vodka in the United
States.  (Id., ¶ 70).

Agreement incorporated the June 1991 Agreement and its February 6, 1992 addendum, and further, stated that VAO-SPI assigned the marks to PepsiCo until December 31, 2000. (<u>Id.</u>, ¶ 77; <u>Id.</u>, Ex. B).

By April 1996, VAO-SPI was transformed into the Foreign Economic Closed Joint-Stock Company Sojuzplodoimport ("VZAO-SPI"). (<u>Id.</u>, ¶ 43). Sorochkin continued to perform the executive functions of VZAO-SPI until defendant Shefler became the president of VZAO-SPI in April 1997. (<u>Id.</u>, ¶¶ 43-44). On December 26, 1997, VZAO-SPI sold the worldwide rights to the STOLICHNAYA marks to another company, the Closed Auction Company Sojuzplodimport ("ZAO-SPI"). (<u>Id.</u>, ¶ 52). In April 1999, Spirits International agreed to cause the assignment of the United States mark registration to defendant Allied Domecq, and S.P.I. Spirits agreed to supply STOLICHNAYA vodka to defendant Allied Domecq upon the expiration of the agreement with PepsiCo. (<u>Id.</u>, ¶ 56).

In November 2000, Defendants S.P.I. Spirits and Spirits International, as purported successor to VAO-SPI, entered into an agreement with Allied Domecq. (<u>Id.</u>, ¶ 79, Ex. D). By the agreement, Spirits International appointed Allied Domecq as the exclusive "owner" of all STOLICHNAYA marks in the United States. (<u>Id.</u>, ¶ 80). Under the agreement, Allied Domecq is not permitted to sell the rights in the marks or assign the marks to entities other than affiliates. (<u>Id.</u> ¶ 81). Further, at the expiration of the agreement, Allied Domecq is required to reconvey all its rights, title, and interest in the marks to Spirits International. (<u>Id.</u>). At the expiration of the 1994 Agreement, and at the direction of Spirits International, PepsiCo assigned the marks to

Allied Domecq as of January 1, 2001.[5]  (Id., ¶ 80, Ex. D).

In or around July 2001, the Moscow Chamber of Registration registered the transformation of VVO-SPI to Federal State Unitary Enterprise Foreign Economic Association Sojuzplodoimport ("FGUP").  (Id. ¶ 39).

Plaintiffs claim that there are clouds on the chain of title to the STOLICHNAYA marks preventing Allied Domecq from holding valid title to the marks.  Plaintiffs also claim that the Allied Domecq defendants acquired the mark through fraudulent conduct committed by Sorochkin, who is not a defendant in this action, and by defendants Shefler and Oliykik.

Plaintiffs allege that Sorochkin conspired to make it appear that the Soviet state-controlled entity VVO-SPI was lawfully transformed into a private joint stock company.  (Id., ¶¶ 28, 31).  Plaintiffs allege that in 1990, after VVO-SPI gained control over the rights to the STOLICHNAYA marks, Sorochkin created VAO-SPI, which is a name substantially identical to VVO-SPI's name.  (Id.).  Plaintiffs further allege that Sorochkin deliberately amended the new company's corporate charter to reflect that it was the successor to VVO-SPI to further his

_____

[5]The reassigned marks listed in the assignment included the following: STOLICHNAYA (Reg. No. 865,462), STOLICHNAYA (Reg. No. 1,291,454), STOLICHNAYA (Reg. No. 2,317,475), STOLI (Reg. No.1,244,735), STOLICHNAYA RUSSIAN VODKA (Reg. No.1,852,552), STOLICHNAYA KAFYA (Reg. No. 2,155,523), STOLICHNAYA LIMONNAYA VODKA (Reg. No. 2,334,080), STOLICHNAYA LIMONNAYA (Reg. No. 2,339,463), STOLICHNAYA LIMONNAYA VODKA (Reg. No. 2,334,079), STOLICHNAYA OHRANJ (Reg. No. 2,291,831), STOLICHNAYA OHRANJ (Reg. No. 2,233,190), STOLICHNAYA OHRANJ (Reg. No. 1,988,911), STOLI PERSIK (Reg. No. 2,189,745), STOLICHNAYA STOLI PERSKI  (Reg. No. 2,339,689), STOLICHNAYA STOLI RAZBERI (Reg. No. 2,204,355), STOLI RAZBERI (Reg. No. 2,175,465), STOLICHNAYA STRASBERI (Reg. No. 2,202,991), STOLI STRASBERI (Reg. No. 2,205,863), STOLI VANIL (Reg. No. 2,192,600), STOLI ZINAMON (Reg. No. 2,192,681), STOLICHNAYA GOLD (application) (Reg. No. 75/184,282) (collectively the "STOLICHNAYA marks").  (Id., ¶ 80).

scheme. (Id., ¶ 33). Plaintiffs allege that over the next several years, Sorochkin took advantage of the economic disarray that the dissolution of the U.S.S.R[6] caused to take the physical, monetary, and other assets of VVO-SPI, including the STOLICHNAYA marks. (Id., ¶31). Plaintiffs allege that to further this scheme, Sorochkin primarily utilized two forged letters signed by the Russian First Deputy Minister of the Ministry of Agriculture.[7] (Id., ¶ 37). Plaintiffs also allege that the formation of VAO-SPI did not comply with the procedural requirements for the transformation of a state enterprise into a private joint stock company. (Id., ¶ 40).

Plaintiffs, in their Second Amended Complaint, include allegations that recently, the Russian courts have issued decisions relevant to the instant case. (Id., ¶¶ 95-109). Specifically, plaintiffs' allege that on December 21, 2000, the Moscow Court of Arbitration held that VAO-SPI was not a legal successor to VVO-SPI. (Id., ¶¶ 100-01, Ex. F). Plaintiffs further allege that on October 16, 2001, that decision was upheld by Russia's high court. (Id., ¶ 104, Ex. H). Plaintiffs also allege that on January 30, 2002, the Moscow Court of Arbitration held that the December 26, 1997 assignment of the STOLICHNAYA marks from VZAO-SPI (the legal

---

[6]The U.S.S.R. was officially dissolved on December 26, 1991.

[7]Around October 1992, the Russian Federation Committee on Patents and Trademarks ("Rospatent"), the Russian equivalent of the Patent and Trademark Office, declared that the foreign registrations for the STOLICHNAYA marks belonged to VAO-SPI as the "full and rightful successor to VVO Sojuzpldoimport." (Id., ¶ 41). Rospatent further declared that VAO-SPI possessed the exclusive right to export Russian vodka using the marks. (Id.). Around October 1994, Rospatent further declared that the domestic registrations of the marks also belonged to VAO-SPI.. (Id.).
Plaintiffs allege that Sorochkin filed at least one of the allegedly forged letters with the Rospatent to obtain the Rospatent declaration that VAO-SPI was the "full and rightful successor to VVO Sojuzplodoimport," and that the exclusive right to export Russian vodka using those marks belonged to VAO-SPI. (Id.).

successor of VAO-SPI) to ZAO-SPI, which subsequently assigned the marks to Spirits International, as well as the January 12, 1998 amendment thereto, were null and void. (Id., ¶¶ 106-07.)  Plaintiffs seek, by this action, to have the duly issued orders of the Russian courts recognized and applied in the United States.[8]  (Id., ¶ 3).

Plaintiffs also allege that defendants Shefler and Oliynik conspired to steal the marks from the Russian Federation.  (Id., ¶¶ 43-61, 73-88).  Plaintiffs allege that Shefler and Oliynik owned, directed, and dominated the SPI entities that sold the rights to use the marks in the United States to Allied Domecq, while purporting to license the right to import STOLICHNAYA vodka to defendant Allied Domecq Spirits & Wines USA, Inc.  (Id.).  Plaintiffs allege that Shefler and Oliynik persuaded PepsiCo that the series of entities they created were successors-in-interest to the rights of the Soviet Union in the marks.  (Id., ¶ 76).  Plaintiffs allege that Shefler and Oliynik controlled VZAO-SPI when the marks were transferred to ZAO-SPI on December 26, 1997, and that while the marks were held by ZAO-SPI, Shefler and Oliynik maintained control over that entity.  (Id., ¶ 52).  Plaintiffs claim that Shefler and Oliynik exercised control indirectly, by exercising influence over the majority shareholder of the company, Shefler's brother-in-law; then, directly, by Oliynik's position as General Director of the entity. (Id.).

---

[8]These Russian court decisions are irrelevant to the trademark rights of the parties.  It is well-settled law that "when trademark rights within the United States are being litigated in an American court, the decisions of foreign courts concerning the respective trademark rights of the parties are irrelevant and inadmissible."  Vanity Fair Mills, Inc., v. T. Eaton Co. 234 F.2d 633, 639 (2d Cir.1956).  A trademark is inherently territorial and it exists in each country solely according to that particular country's statutory scheme.  Calzaturificio Rangoni S.P.A. v. United States Shoe Corp., 868 F.Supp 1414, 1418 (S.D.N.Y. 1994).  Once a trademark has been registered in the United States "its status . . . is independent of the continued validity of its registration abroad, and its duration, validity, and transfer in the United States are governed by [the Lanham Act]" Id. (quoting Vanity Fair Mills,  234 F.2d at 644).

Plaintiffs allege that when the PepsiCo license agreement expired in 2001, Shefler and Oliynik controlled Spirits International, and through it, directed PepsiCo to assign the mark registrations to Allied Domecq. (Id., ¶ 80). Plaintiffs claim that in reliance on these misrepresentations, PepsiCo assigned the STOLICHNAYA marks to Allied Domecq instead of their rightful owner, the Russian Federation. (Id.).

Plaintiffs bring claims for declaratory judgment (Claim 1), cancellation of marks (Claim 10), and rectification of register (Claim 15). Plaintiffs also allege federal claims of unfair competition (Claim 5), trademark infringement (Claims 6 and 11), trademark dilution (Claims 7 and 12), false designation of origin (Claims 8 and 13), and copyright infringement (Claim 14). Plaintiffs allege state common law claims of fraud (Claims 2 and 9), unjust enrichment (Claim 3), and misappropriation (Claim 4).

The SPI Defendants move to dismiss all claims against them (Claims 1-8, and 14-15). The Allied Domecq Defendants move to dismiss claims 1-2, 4, 9, 11-12, and 14-15 in their entirety, as well as portions of claims 5 and 13.[9] Plaintiffs have moved for summary judgment on their 13th claim for relief.

For the foregoing reasons, the defendants' respective motions to dismiss are granted. Plaintiffs' motion for summary judgment on Claim 13 is denied.

---

[9]The Allied Defendants, in their brief, comment that Count 10 is not at issue in Allied Domecq's motion to dismiss because the basis of Claim 10 was changed after briefing was complete. They argue, however, that if this Court dismisses Claim 1, Claim 10 should also be dismissed as it, like the other trademark claims, is predicated on plaintiffs' allegation that FTE owns Allied Domecq's STOLICHNAYA mark and registration in the United States. (Allied Domecq Defs.' Consolidated Submission, at 2, n.2).

**DISCUSSION**

**A.    Motions to Dismiss Standard**

On a motion to dismiss, the allegations of the complaint must be accepted as true.  Cruz

v. Beto, 405 U.S. 319, 322 (1972).  The Court must construe the allegations of the complaint in a

light most favorable to plaintiff.  Scheuer v. Rhodes, 416 U.S. 232 (1974).  Furthermore, a

complaint cannot be dismissed for failure to state a claim unless it appears, beyond a doubt, "that

the plaintiff can prove no set of facts in support of [a] claim which could entitle him to relief.'"

Dahlberg v. Becker, 748 F.2d 85, 88 (2d Cir. 1984) (citations omitted).[10]

**B.    Incontestability of STOLICHNAYA marks**

Defendants move to dismiss claims 1, 5-8, 11-13, and 15 on the grounds that Allied

Domecq's possession of incontestible rights to the STOLICHNAYA trademarks preclude

plaintiffs from asserting claims of ownership or trademark rights.[11]  The Allied Domecq

Defendants further argue that the incontestible rights preclude plaintiffs from asserting Claim 4.

Section 22(b) of the Lanham Act provides that "[t]o the extent that the right to use the

---

[10]On a motion to dismiss pursuant to Rule 12(b)(6), the Court is precluded from
considering matters outside of the complaint.  Courtenay Comms. Corp. v. Hall, 334 F.3d 210,
213 (2d Cir. 2003).  In this regard, a complaint includes any written instrument attached as an
exhibit and any statements or documents incorporated by reference into the complaint, or to
documents either in plaintiff's possession or of which plaintiff has knowledge of, relied upon in
bringing the action, and are integral to the complaint.  Chambers v. Time Warner, Inc., 282 F.3d
147, 152 (2d Cir. 2002); Newman & Schwartz v. Asplundh Tree Expert Co., Inc., 102 F.3d 6600,
662 (2d Cir. 1996) (citations omitted).

[11]The Allied Domecq Defendants are not seeking to dismiss those portions of Counts 5
and 13 that concern deceptive marketing and false advertising unrelated to the STOLICHNAYA
mark.

registered mark has become incontestable . . . the registration shall be conclusive evidence of the

validity of the registered mark and of the registration of the mark, of the registrant's ownership of

the mark, and of the registrant's exclusive right to use the registered mark in commerce."  15

U.S.C. § 1115(b).  "The incontestability provisions [of the Lanham Act] . . . provide a means for

the registrant to quiet title in the ownership of his mark."  Park 'N Fly v. Dollar Park and Fly,

Inc., 469 U.S. 189, 203 (1985).  This Court is constrained by those provisions.  See id. ("the

power of the courts to cancel registrations and 'to otherwise rectify the register,' must be subject

to the specific provisions concerning incontestability") (quoting 15 U.S.C. § 1115).[12]

Allied Domecq holds an incontestible ownership right to the STOLICHNAYA mark in

---

[12]15 U.S.C. § 1065 sets forth the statutory requirements for a mark to achieve incontestability.  It states that subject to certain exceptions not relevant here,

> the right of the registrant to use such registered mark in commerce for the goods or services on or in connection with which such registered mark has been in continuous use for five consecutive years subsequent to the date of such registration and is still in use in commerce, shall be incontestable: Provided, that –
>
> (1) there has been no final decision adverse to registrant's claim of ownership of such mark for such goods or services, or to registrant's right to register the same or to keep the same on the register; and
>
> (2) there is no proceeding involving said rights pending in the Patent and Trademark Office or in a court not finally disposed of; and
>
> (3) an affidavit is filed with the Director within one year after the expiration of any such five-year period setting forth those goods or services stated in the registration on or in connection with which such mark has been in continuous use for such five consecutive years and is still in use in commerce, and other matters specified in paragraphs (1) and (2) of this section; and
>
> (4) no incontestable right shall be acquired in a mark which is the generic name for the goods or services or a portion thereof, for which it is registered.

the United States. The Patent and Trademark Office identifies defendant Allied Domecq as the owner of U.S. Trademark Reg. No. 865,462 for STOLICHNAYA for "vodka." (Sec. Am. Compl ¶ 80). The assignment records of the Patent and Trademark Office show that Allied Domecq B.V. received its rights in U.S. Trademark Reg. No. 865,462 in January 2001, by virtue of an assignment from PepsiCo, Inc. (Id.). The assignment records further show that PepsiCo received its rights in the subject registration in June 1991 by virtue of an assignment from Soviet State entity VVO-SPI.[13] (Id., ¶ 75). The Patent and Trademark Office has declared the U.S. Trademark Reg. No. 865,462 for STOLICHNAYA to be "incontestable." (Allied Defs.' Motion to Dismiss, Ex. B, Copy of official records for U.S. Trademark Reg. No. 865,46, Ex. C, Certified copy of complete assignment records, Ex. D, Certified copy of V/O-SPI to Kraus assignment, Ex. E, Certified copy of Kraus to PepsiCo assignment, Ex F, Certified copy of PepsiCo to V/O-SPI assignment, Ex. G., Certified Copy of VVO-SPI to PepsiCo assignment).[14]

---

[13]Allied Domecq, as the assignee of an incontestible registration, may rely on the registration as conclusive proof of its ownership. *See* 15 U.S.C. § 1127 (defining the term "Registrant" as inclusive of assignees).

[14]An opportunity to challenge any of the STOLICHNAYA applications for trademark registration existed. As the Supreme Court noted in Park 'N Fly, 469 U.S. at 202:

If the Patent and Trademark Office examiner determines that an applicant appears to be entitled to registration, the mark is published in the Official Gazette. 15 U.S.C. § 1062(a). Within 30 days of publication, any person who believes that he would be damaged by registration of the mark may file an opposition. 15 U.S.C. § 1063. Registration of a mark provides constructive notice through the United States of the registrant's claim to ownership. 15 U.S.C. § 1072. Within five years of registration, any person who believes that he is or will be damaged by registration may seek to cancel a mark. 15 U.S.C. § 1064(a). A mark may be canceled at any time for certain specified grounds, including that it was obtained fraudulently . . . . 15 U.S.C. § 1064(c).

## C.   Defenses to Incontestability

Despite a mark's "incontestability," there are limited grounds available to challenge the mark.  See 15 U.S.C. § 1064(3); see also 15 U.S.C. § 1115 (containing the related defenses in Section 33(b) of the Lanham Act).  The applicable section sets out nine defenses to incontestability.  The relevant portions here are:

> (1) That the registration or the incontestable right to use the mark was obtained fraudulently; or . . .
>
> (3) That the registered mark is being used by or with the permission of the registrant or a person in privity with the registrant, so as to misrepresent the source of goods or services on or in connection with which the mark is used; or
>
> (4) That the use of the name, term, or device charged to be an infringement is a use, otherwise than as a mark, of the party's individual name in his own business, or of the individual name of anyone in privity with such party, or of a term or device which is descriptive of and used fairly and in good faith only to describe the goods or services of such party, or their geographic origin; or . . .
>
> (9) That equitable principles, including laches, estoppel, and acquiescence, are applicable.

15 U.S.C. § 1115(b).

Plaintiffs' challenge ownership of the mark on five grounds.  Plaintiffs argue that (1) defendants have filed fraudulent affidavits with the Patent and Trademark Office to obtain the incontestible rights to the marks; (2) the Allied Domecq Defendants use of the STOLICHNAYA mark is geographically deceptive; (3) defendants have misrepresented the source of goods in connection with the STOLICHNAYA marks, and (4) there exists a final decision adverse to Allied Domecq's claim of ownership; and (5) that equitable principles compel the court to disregard the incontestability provisions.  None of these exceptions to incontestability apply here.

### 1.    Fraud

Fraud on the Patent and Trademark Office is an exception to incontestability and grounds for canceling a registration.  Dial-A-Mattress Operating Corp. v. Mattress Madness, Inc., 841 F.Supp. 1339, 1353 (E.D.N.Y. 1994) (citing National Trailways Bus System v. Trailway Van Lines, Inc., 269 F. Supp. 352, 356 (E.D.N.Y.1965)).  Plaintiffs must allege: (1) a false representation regarding a material fact; (2) knowledge or belief that the representation is false; (3) an intention to induce the listener to act or refrain from acting in reliance upon the misrepresentation; (4) reasonable reliance upon the misrepresentation; and (5) damage proximately resulting from such reliance.  3 J. Thomas McCarthy, Trademarks and Unfair Competition § 31.21(2)(a), at 31:96 (4th ed. 2004); Dial-A-Mattress Operating Corp., 841 F.Supp at 1399.

Like all allegations of fraud, a claim that fraud has been committed on the Patent and Trademark Office must be pled with the particularity required by Federal Rule of Civil Procedure 9(b).  See, e.g., Kash 'N Gold Ltd. v. Samhill Corp., 90 Civ. 1097, 1990 WL 196089 (S.D.N.Y. Nov. 29, 1990).  The party pleading fraud on the Patent and Trademark Office must "specify the statements that [it] contends were fraudulent" and "explain why the statements were fraudulent." See Shields v. Citytrust Bankcorp, Inc., 25 F.3d 1124, 1128 (2d Cir. 1994).

In their briefs, plaintiffs allege several representations by Allied Domecq to the Patent and Trademark Office that they contend amount to fraud.  Plaintiffs argue that Allied Domecq filed with the Patent and Trademark Office false declarations of incontestability, and false declarations of continued use in commerce.  Plaintiffs argue that in November 2004, after the

instant lawsuit was filed, Allied Domecq Spirits & Wine USA filed three affidavits of incontestability in which its representative attested that "there is no proceeding involving [the right to use the mark] . . . pending in the Patent and Trademark Office or in a court and not finally disposed of."  Plaintiffs further argue that similar false affidavits were earlier filed for other trademarks at issue, notwithstanding Russian judicial proceedings that concerned title to the marks.[15]

The alleged misrepresentations do not rise to the level of affirmative fraud.  First, plaintiffs' Second Amended Complaint does not contain the specific allegations of fraud in plaintiffs' brief.  In the complaint, plaintiffs merely make the conclusory allegation that defendants "knowingly present[ed] and cause[ed] false information to be presented to the [Patent and Trademark Office], in reliance on which the Patent and Trademark Office recorded the STOLICHNAYA Second Generation Marks as belonging to Allied Domecq instead of to their rightful owner, the Russian Federation."  (Sec. Am. Compl., ¶ 122).

Second, even if the complaint contained the allegations of fraud contained in plaintiffs' brief, plaintiffs would not prevail.  An assignment is not "incontestible"; rather, the exclusive right to use the mark is.  See 15 U.S.C. §§ 1065, 1115(b).  PepsiCo was the "registrant" of the STOLICHNAYA registration when it executed the assignment.  PepsiCo therefore possessed the

---

[15]Plaintiffs argue that despite these proceedings, Allied Domecq filed a total of nine Section 15 Declarations of Incontestability without disclosing the adverse legal decisions in the Russian Federation.  Plaintiffs argue that Allied Domecq engaged in acts of fraud with respect to nine later-filed STOLICHNAYA "formative" marks.  To be relevant here, plaintiffs' allegations must relate to the registration at issue, U.S. Trademark Reg. No. 865,462.  See 15 U.S.C. § 1064(3) (an incontestable registration may be canceled if the mark is generic . . . or "its registration was obtained fraudulently."  The alleged acts of fraud with respect to other trademark applications are therefore not relevant to this inquiry.

full legal power to transfer the mark. PepsiCo executed a written document containing the representation that PepsiCo assigned the marks to Allied Domecq. The Patent and Trademark Office accepted this assignment for the purpose of transferring the incontestable registration to Allied Domecq. Plaintiffs merely allege that a defective chain of title underlying the assignment. Plaintiffs have cited no authority for the proposition that the mere recording of an assignment may constitute fraud on the Patent and Trademark Office.

Plaintiffs have not specifically articulated fraudulent in obtaining the registration of the marks. See Fed. R. Civ. P 9(b). Plaintiffs therefore cannot attack Allied Domecq's incontestable status as owner of the STOLICHNAYA marks on this ground by solely attempting to attack the transfer of rights.

**2.      Use of a Geographically Deceptive Mark**

Plaintiffs claim that they may attack Allied Domecq's rights in the trademarks on the ground that the STOLICHNAYA mark is geographically deceptive pursuant to Section 2(a) of the Lanham Act, 15 U.S.C. § 1052(a). Under Section 2(a), a mark's registration may be contested if "its registration was obtained contrary to the provisions of subsection (a), (b), or (c) of section 1052 of this title." 15 U.S.C. § 1064(3). Plaintiffs argue that Defendants' mere use of STOLICHNAYA, a Russian word, constitutes a violation of Section 2(a) of the Lanham Act.

Section 2(a) of the Trademark Act prohibits registration of a designation that consists of or comprises (1) deceptive matter, or (2) geographical indications which, when used on or in connection with wines or spirits, identifies a place other than the origin of the goods.

Sect. 2. No trademark . . . shall be refused registration on the principle register on account of its nature unless it -

16

(a) Consists of or comprises (1) . . . deceptive . . . . matter; . . . or (2) a geographical indication which, when used on or in connection with the wines or spirits, identifies a place other than the origin of the goods and is first used on or in connection with wines or spirits by the applicant on or after one year after [January 1, 1995].

Under the applicable portion of Section 2(a), a registration is prohibited if it consists of or comprises a "geographical indication, which . . . identifies a place other than the origin of the goods . . . ."[16] "A geographically descriptive term or phrase is one that 'designates geographical location and would tend to be regarded by buyers as descriptive of the geographic location of origins of the goods or services.'" Forschner Group, Inc. v. Arrow Trading Co., 30 F.3d 348, 355 (2d Cir. 1994). "That a phrase or term evokes geographic associations does not, standing alone, support a finding of geographical descriptiveness. The phrase or term must also 'designate geographical location.'" Id. (citations omitted).

The trademark at issue is the word "STOLICHNAYA." The trademark does not include the term "Russian Vodka," the phrase "Distilled in Russia," or any other trade dress element, such as the Moscow Hotel, that plaintiffs contend may suggest a geographic location in Russia. Plaintiffs argue that the use of this Russian-language term suggests that the product is associated with Russia. That fact alone is insufficient to sustain a claim for geographic descriptiveness or deceptiveness. The fact that a term suggests an association with a geographic area is insufficient to succeed under Section 2(a). See id., at 355. The term STOLICHNAYA does not "designate" a geographic location.

_____

[16]The first prong of Section 2(a) does not apply here. Plaintiffs do not allege that STOLICHNAYA is a geographical indication, only that it "suggests a well known geographic location."

### 3.    Misrepresentation of the Source of Goods

Plaintiffs contest Allied Domecq's ownership rights pursuant to Section 14(3) of the Lanham Act.  Under Section 14(3) of the Lanham Act, a mark may be contested if "it is being used so as to misrepresent the source of goods or services on or in connection with which the mark is used."  15 U.S.C. § 1064(3).  To state a claim under Section 14(3) of the Lanham Act, a plaintiff must plead that the trademark owner engaged in a "deliberate and blatant misrepresentation of source wherein the registration is merely a vehicle for the misuse rather than evidence of even a colorable ownership claim," or that the trademark owner intentionally displayed the mark "in such a manner as to facilitate passing off the goods as those of another." Global Maschien GmbH v. Global Banking Sys., Inc., 227 U.S.P.Q. 862, 863 n.3 (Trademark Tr. & Appeal Bd. 1985).

Plaintiffs argue that defendants have deliberately sought to pass off their goods as plaintiffs', using virtually identical print style and labels on their STOLICHNAYA bottles. Here, plaintiffs have made no allegations that Allied Domecq is representing that its vodka product is anything other than vodka sold by Allied Domecq and produced by the SPI Defendants.  Even if plaintiffs' complaint contained these allegations, the claim would still fail. First, according to the allegations, FGUP, not FTE, is the legal successor to VVO-SPI.   (Sec. Am. Compl., ¶ 39).  Second, FTE was not created until December 2001, and there is no allegation that it has ever sold vodka in the United States under a STOLICHNAYA label.  Third, VVO-SPI assigned its rights in the STOLICHNAYA marks to PepsiCo, and PepsiCo assigned the same rights to Allied Domecq, giving Allied Domecq the exclusive right to sell vodka under

the STOLICHNAYA marks in the United States. Finally, VVO-SPI is no longer selling STOLICHNAYA vodka in the United States and has not done so since June 1991. Even if Allied Domecq were using a label that is virtually identical to the label previously used by VVO-SPI, Allied Domecq's sales in the United States cannot be deemed to constitute deliberate passing off.

**4.      Final Decision Adverse to Ownership**

Plaintiffs next argue that under Section 15(1) of the Lanham Act, they may contest Allied Domecq's rights to the marks because of recent Russian court decisions stating that VAO-SPI was not the legal successor to VVO-SPI. Section 15(1) provides that for a mark to be declared incontestable, there must have been "no final decision adverse to a registrant's claim of ownership of such mark . . . ." 15 U.S.C. § 1065. Section 15(1) of the Lanham Act does not apply here because Section 15(1) is not a permissible basis to challenge an incontestable registration. An incontestible registration can be challenged only on the grounds set forth in Section 14(3) of the Lanham Act, 15 U.S.C. § 1064(3), and the related defenses in Section 33(b), 15 U.S.C. § 1115. Section 15(1) is not an included manner of challenging the registration. Section 15 merely sets forth the procedural mechanism by which a registrant first files a claim for incontestability. See generally 15 U.S.C. § 1065 (setting forth the criteria that, if satisfied, will lead the Patent and Trademark Office to declare a mark to be incontestable).

Further, plaintiffs may not rely on Russian court decisions to show that the affidavits of incontestability contained false information. The status of plaintiffs' trademark rights in Russia has no bearing on the question of who owns the trademark rights in the United States. See, e.g.,

<u>Itokoyama Co. v. Wine of Japan Import, Inc.</u>, 175 F.3d 266, 272-73 (2d Cir. 1999) ("rights (or lack of rights) to a trademark in the United States cannot be established by the fact that [a party] was found by a foreign court to have (or not to have) rights over the same mark in a foreign country"). The questions regarding ownership of the United States trademark rights in a mark and registration are subject to the same analysis as applied in any other case, as the United States rights exist independent of any foreign rights. <u>Id.</u> Plaintiffs have shown no basis in United States law to support their claim of trademark rights in this country. Plaintiffs have never used the marks in the United States. Regardless of any rights that the plaintiffs may or may not have in Russia, they have no United States rights superior to Allied Domecq.

**5.      Equitable Principles**

15 U.S.C. § 1115(b)(9) provides an exception to incontestability where "equitable principles, including laches, estoppel, and acquiescence, are applicable." Plaintiffs argue that equitable principles provide a defect to Allied Domecq's incontestable right because: (1) they claim that Allied Domecq's claim derives from an invalid chain of title; (2) they claim that Allied Domecq was aware of the cloud on Spirits International's claim of ownership of the STOLICHNAYA rights, yet entered into an assignment; (3) the assignment from PepsiCo to Allied Domecq for $10 was a sham transaction; and (4) Spirits International has misrepresented the nature of its transaction with Allied Domecq to the PTO by claiming that it is the owner of the rights.

Plaintiffs' arguments are not a basis for challenging the incontestability of the STOLICHNAYA registration. In their complaint, plaintiffs have not set forth a single equitable

defect to the registration.  Instead, plaintiffs argue that the allegations support a claim of "unclean hands."  Plaintiffs have cited no authority for the use of "unclean hands" as an affirmative attack on an incontestable registration.  However, even if such an attack were permissible under the statute, plaintiffs have not alleged any damage to themselves resulting from Allied Domecq's actions.  Plaintiffs cannot show that when Allied Domecq acquired the registration from PepsiCo, it engaged in unscrupulous conduct that affected the equitable relations between Allied Domecq and Plaintiffs.  Plaintiffs assertion of a defect in the incontestability of the marks on the basis of unclean hands therefore fails.

The incontestible federal registration constitutes "conclusive evidence" of ownership of the STOLICHNAYA mark.   See Financial Matters, Inc. v. PepsiCo., Inc. 92 Civ. 7497, 1993 WL 378844 (S.D.N.Y. Sept. 24, 1993).  FTE has not stated a proper statutory claim upon which it may challenge the transfer of that incontestable ownership of the STOLICHNAYA registration.  Claims 1, 6-8, 10-12, and 15 are therefore dismissed.  See Calzaturificio Rangoni S.p.A. v. U.S. Shoe Corp, 868 F.Supp. 1414, 1420-21; see also Oreck v. Thomson Consumer Electronics, Inc., 796 F.Supp. 1152, 1161 (S.D. Ind. 1992) (where plaintiff could not state a claim challenging the incontestable status of the defendant's mark, "the remaining . . . claims are without merit by nature of the 'incontestable' status of the [trademark]" and are properly dismissed).  Claims 5 and 13 are similarly dismissed to the extent those causes of action are premised on the use of the STOLICHNAYA marks.[17]

_____

[17]Counts 5 and 13 state a cognizable cause of action against the Allied Domecq Defendants based on allegations of deceptive marketing and false advertising unrelated to their use of the STOLICHNAYA marks.  Claim 10 for cancellation of the marks is dependant upon the legal viability of the first count seeking a declaration that FTE is the true owner of the

As plaintiffs have no ownership interest in the United States trademarks alleged to have been misappropriated, plaintiffs misappropriation claim fails.  2 J. Thomas McCarthy, McCarthy on Trademarks and Unfair Competition § 10.72 (4th ed. 2004); see Eastern Air Lines, Inc. v. New York Air Lines, Inc., 559 F. Supp 1270 (S.D.N.Y. 1983) (plaintiff who fails to prove trademark rights cannot claim that its purported rights to the trademark have been "misappropriated").[18]

## D.     Copyright Claim (14)

Plaintiffs pursue an action for a restored copyright.  "To establish [copyright] infringement, two elements must be proven: (1) Ownership of a valid copyright, and (2) copying of constituent elements of the work that are original."  Feist Publ'ns, Inc. v. Rural Tel. Serv. Co., 499 U.S. 340, 361 (1991).  Plaintiffs have alleged that the STOLICHNAYA labels used by the defendants is strikingly similar to those labels used by the plaintiffs.

Plaintiffs also allege that they possess a ownership of a valid United States copyright. Following the United States' admission to the Berne Convention, Congress enacted Section 104A of the Copyright Act.  This section provides for the automatic restoration of copyrights

---

STOLICHNAYA marks.  Because Count One is being dismissed, Count 10 must be dismissed as well.

[18] The SPI Defendants also argue that all Claims should be dismissed against them, pursuant to Fed. R. Civ. P. 12(b)(7), for failure to join FGUP.  The joinder of these parties is only implicated to the extent that plaintiffs' can bring copyright and trademark claims of ownership of the STOLICHNAYA marks.  See, e.g., First Fin. Mktg. Servs. Group v. Field Promotions, Inc., 286 F.Supp. 295, 298 (S.D.N.Y. 1968) ("It is familiar law that the copyright owner is an indispensable party to a suit where the validity of his copyright is in issue.").  As this Court has determined that Allied Domecq possesses incontestible rights to the trademarks at issue, it is not necessary to address the 12(b)(7) argument of the SPI Defendants.

which may have entered into the public domain in the United States to the source country of such copyright, as of January 1, 1996. See 17 U.S.C. § 104A. To qualify as a "restored work" the copyright must (1) be an original work of authorship; (2) not be in the public domain in its source country; (3) be in the public domain in the United States due to noncompliance with formalities imposed at any time by the United States copyright law or lack of national eligibility; and (4) have at least one author or right-holder who was, at the time the work was created, a national or domiciliary of an eligible country, and if published, was first published in an eligible country and not published in the United States during the 30-day period following publication in such eligible country. 17 U.S.C. §§ 104A(h)(6)(A)-(D).

The Allied Domecq Defendants argue that plaintiffs cannot assert a copyright infringement claim because they have not complied with the notice requirements under Section 104(a). To maintain an action for a restored copyright, plaintiffs were required to adhere to certain formal notice requirements with respect to a "reliance party." See Hoepker v. Kruger, 200 F.Supp.2d 340, 346 (S.D.N.Y. 2002).

17 U.S.C. § 104A provides safeguards to "reliance parties." The term "reliance party" means any person who –

> (A) with respect to a particular work, engages in acts, before the source country of that work becomes an eligible country, which would have violated section 106 if the restored work had been subject to copyright protection, and who, after the source country becomes an eligible country, continues to engage in such acts; [or]
> . . .
> (C) as the result of the sale or other disposition of . . . significant assets of a person described in subparagraph (a) . . . is a[n] . . . assignee . . . of that person.

17 U.S.C. § 104A(h).

PepsiCo was a reliance party. PepsiCo began selling STOLICHNAYA product pursuant to its February 1992 agreement with VVO-SPI. Russia did not become an "eligible country" until March 1995, when Russia acceded to the Berne Convention.. PepsiCo continued to sell STOLICHNAYA vodka after March 1995, and subsequently assigned all rights in U.S. Trademark Reg. No. 1,852,522 to Allied Domecq in January 2001. If plaintiffs possessed copyright protection, PepsiCo would have used the copyright before and after Russia became eligible. PepsiCo would therefore have qualified as a reliance party.

17 U.S.C. §§ 104A(d)(2)(A) and (B) impose formal notice requirements on the owner of a "restored copyright" before it may commence an infringement action against a "reliance party," such as Allied Domecq:

> Infringement actions against reliance parties can be commenced (1) only after the restored copyright owner has provided notice of intent to enforce the restored copyright (either by filing a notice with the Copyright Office for publication in the Federal Register or by service of such notice on the reliance party) and (2) only for those acts of infringement that either commence or continue 12 months or more after such notice is given.

Hoepker, 200 F.Supp.2d at 346..

As an assignee of PepsiCo's rights in the STOLICHNAYA label, Allied Domecq also qualifies as a reliance party entitled to the protections of Section 104A of the Copyright Act. See 17 U.S.C. § 104A(h). Accordingly, under Section 104A of the Copyright Act, defendants are entitled to proper notice of a foreign rightholder's intent to enforce a restored copyright and to a 12-month grace period in which to dispose of existing copies before an infringement claim may be brought. See 17 U.S.C. § 104A(d)(2). Plaintiffs have not provided the notice required by Section 104A. Plaintiffs' copyright claim is therefore dismissed.

**E.     Fraud Claims (2 and 9)**

The SPI Defendants move to dismiss plaintiffs' state law fraud claim against them for two reasons.  First, the SPI Defendants argue that plaintiffs have failed to plead two of the elements of fraud.  Second, plaintiffs have failed to plead fraud with the heightened particularity required by Rule 9(b).

Plaintiffs allege that the SPI Defendants misrepresented to PepsiCo that they were the rightful owners of the STOLICHNAYA marks in the United States and the lawful successors-in-interest to VVO-SPI.  Plaintiffs allege that these misrepresentations were made with the intent to defraud the Russian Federation.  Plaintiffs further allege that, in reliance upon these alleged misrepresentations, PepsiCo assigned the Second Generation marks to Allied Domecq instead of their "rightful owner," the Russian Federation.

A claim for fraud cannot lie under New York law where the alleged misrepresentation is made to and relied upon by a third party, but not the plaintiff.  See Cement & Concrete Workers v. Lollo, 148 F.3d 194, 196 (2d Cir. 1998) (citations omitted).  Here, plaintiffs cannot maintain their fraud claim because the Second Amended Complaint fails to allege that plaintiffs in any way relied on false statements the SPI and the Allied Domecq Defendants made to PepsiCo.  The Second Amended Complaint acknowledges that PepsiCo was the recipient of the SPI Defendants' alleged false representations, not plaintiffs.  (Sec. Am. Compl., ¶¶ 120-21).  Plaintiffs do not allege any false statements made to them, directly or indirectly, upon which they relied.

Even if plaintiffs could prove their reliance, plaintiffs claim fails because they have not

shown that they were damaged by the alleged fraud.  "A fraud verdict may not rest on allegations of speculative or remote injury to the plaintiff; rather, the plaintiff must have suffered losses as a direct, immediate, and proximate result of the defendant's misrepresentation."  Kaye v. Grossman, 202 F.3d 611, 614 (2d Cir. 2000) (internal quotations and citations omitted).  Plaintiffs have not alleged that if VAO-SPI did not represent to PepsiCo that it was the successor-in-interest to VVO-SPI, and the U.S. rights in the STOLICHNAYA marks had reverted to VVO-SPI, FTE would have benefitted from the reversion.  Indeed, FTE could not have benefitted from that hypothetical course of events because it does not claim to have existed until December 2001, over nine years after VAO-SPI entered into the 1992 Addendum to the 1991 Agreement with Pepsico.

Plaintiffs also failed to plead their fraud claim with the particularity required by Rule 9(b).  Plaintiffs are required to set forth a detailed pleading about "the time, place, speaker, and sometimes even the content of the alleged misrepresentations."  Luce v. Edelstein, 802 F.3d 49, 54 (2d Cir. 1986).  "[A] complaint . . . which fails to adduce any specific facts supporting an inference of knowledgeable participation in the alleged fraud . . . will not satisfy even a relaxed standard."  Devany v. Chester, 813 F.3d 566, 569 (2d Cir. 1987) (citations omitted).

Plaintiffs' fraud claim is based on the allegation that the SPI Defendants knew that their claim to the ownership of reversionary rights to the United States STOLICHNAYA marks was false, and they made misstatements with the intent to defraud the Russian Federation.  The Second Amended Complaint alleges that VAO-SPI was not the legal successor to VVO-SPI and explains the grounds for the Russian courts' holding to that effect.  Likewise, plaintiffs allege that Sorochkin "conspired to make it appear that VVO-SPI . . . had been lawfully transformed

into a private joint stock company." (Sec. Am. Compl., ¶ 28). Plaintiffs however, do not allege

that the corporate or individual SPI Defendants had anything to do with this "conspiracy" or had

knowledge of any defect in the privatization process. Further, although the plaintiffs allege that

letters purportedly signed by the First Deputy Minister of the Ministry of Agriculture were

forgeries, it does not allege that the SPI Defendants had any role in or knowledge of the

purported forgeries. Even if the marks were improperly transferred from the Soviet or Russian

Government, the Second Amended Complaint merely alleges that this transfer occurred at the

initial "privatization" of VVO-SPI. Accordingly, Claim 2, asserted against the SPI Defendants,

is dismissed.

Plaintiff FTE's ninth claim for aiding and abetting fraud alleges that the Allied Domecq

Defendants knew of material facts constituting or evidencing the scheme of the SPI Defendants.

The existence of a fraud is an essential prerequisite to a claim of aiding and abetting a fraud. See

Weight v. Bankamerica Corp. 219 F.3d 79, 91 (2d Cir. 2000). In the absence of a fraud by the

SPI Defendants, plaintiffs cannot maintain an aiding and abetting fraud claim against the Allied

Domecq Defendants. Claim 9 is therefore dismissed.

## G.    Unjust Enrichment Claim (Claims 3)

Plaintiffs' unjust enrichment cause of action against the SPI Defendants is defective. The

elements of an unjust enrichment claim under New York law are "(1) that the defendant

benefitted; (2) at the plaintiff's expense; and (3) that equity and good conscience require

restitution." Kaye v. Grossman, 202 F.3d 611, 616 (2d Cir. 2000) (internal quotations and

citations omitted). The essence of an unjust enrichment claim "is that one party has received

money or a benefit at the expense of another."  Id.  "A defendant is enriched at the expense of a plaintiff when the defendant receives a benefit of money or property belonging to the plaintiff." Granite Partners, P.P. v. Bear, Stearns & Co., 17 F. Supp.2d 275, 313 (S.D.N.Y. 1998).

Plaintiffs' Second Amended Complaint merely asserts, without supporting factual allegations, that the SPI Defendants "have been unjustly enriched by virtue of their actions . . . at Plaintiffs' expense."  (Sec. Am. Compl., ¶ 126).  The Complaint gives two examples of the SPI Defendants' unjust enrichment: (1) "causing the [United States STOLICHNAYA Marks] to purportedly be assigned to Allied Domecq for valuable consideration notwithstanding that the [SPI] Defendants had and have no legal claim to those marks" and (2) "enter[ing] into an agreement to provide Allied Domecq with vodka" and earning a profit therefrom.  (Id.)  These allegations are insufficient to show that equity and good conscience require restitution.  Further, plaintiffs have not alleged that defendants' profits were gained at plaintiffs' expense.

According to plaintiffs' allegations, FTE did not exist until December 2000.  FTE cannot make claims to profits earned by the SPI Defendants prior to that date.  It was not until July 4, 2002 that the Russian Federation, which claims to own the rights in the STOLICHNAYA marks, purportedly assigned to FTE the right to use the Russian STOLICHNAYA trademarks.  Further, there is no allegation that the Russian Federation has ever purported to assign to FTE the rights in the STOLICHNAYA trademarks that FTE claims to own.  Cf. supra note 5 (detailing the STOLICHNAYA marks assigned to Allied Domecq), with note 1 (detailing the STOLICHNAYA marks assigned by the Russian Federation to FTE).  FTE, therefore, has no claim to any profits from STOLICHNAYA vodka sales in the United States. SPI's profits therefore cannot be said to have come at FTE's expense.

Likewise, Ost-Alco's rights are limited to use of the marks in Russia. The Second Amended Complaint alleges that the distillery is "the licensed manufacturer of STOLICHNAYA vodka." (Id., ¶ 12). If so, Ost-Alco is licenced to use the marks by FTE, which claims to have been assigned the rights to the STOLICHNAYA trademarks in Russia only. Ost-Alco's alleged rights as a licensee are therefore limited to use of the marks in Russia.

## H. Unfair Competition Claim (Claim 5)

The SPI Defendants are moving to dismiss the unfair competition claim asserted against it. Section 349 of the New York General Business Law makes unlawful "deceptive acts or practices in the conduct of any business, trade or commerce in the furnishing of any service in [New York]." Plaintiffs allege that defendants' acts and practices are consumer-oriented. Plaintiffs further allege that Defendants' STOLICHNAYA label provides a false description of the geographic origin of the vodka distributed under the label. The SPI Defendants argue that plaintiffs' claim should be dismissed because plaintiffs do not allege that the SPI Defendants violated the statute in the conduct of any business or in furnishing any service in New York.

In the Second Amended Complaint, plaintiffs only allege that the Allied Domecq defendants advertised STOLICHNAYA vodka. The only paragraphs in the complaint containing factual allegations concerning a false description of the geographic origin of the STOLICHNAYA vodka are paragraphs 89-94. In that portion of the complaint, plaintiffs allege that

> [t]he [SPI Defendants] have purchased the Balzams plant in Latvia and SPI Spirits now admittedly manufacturers and bottles its vodka in Latvia. SPI Spirits has admitted in numerous disclosures to the news media that its purported STOLICHNAYA vodka is actually made in Latvia.

(Sec. Am. Compl., ¶ 94). Plaintiffs do not allege in these paragraphs that the SPI Defendants have falsely advertised the vodka or otherwise committed any deceptive acts or practices in the conduct of any business or in furnishing any service in New York, as is required under the statute. Plaintiffs have not stated a claim for unfair competition against the SPI Defendants. Plaintiffs unfair competition claim against the SPI defendants is therefore dismissed.

## I.      False Designation of Origin (Claim 13)

Plaintiffs moved for summary judgment on Claim 13 (false designation of origin). Plaintiffs argue, in support of their motion for summary judgment, that the Allied Domecq Defendants misrepresented the geographic origin of their STOLICHNAYA vodka by advertising Latvian-made vodka as being from Russia. Plaintiffs allege that in the United States, defendant Allied Domecq advertises it STOLICHNAYA vodka as "Russian Vodka," "Genuine Russian Vodka," "Product of Russia," "Imported Russian Vodka," "The Russian Phenomenon," and "Distilled in Russia." Plaintiffs further contend that the Allied Domecq Defendants' mere use of the STOLICHNAYA marks is deceptive and geographically misdescriptive. Plaintiffs claim that they are likely to suffer an injury as a result of the alleged false designation because Ost-Alco currently sells its brand "Jewel of Russia" in the United States and plaintiffs intend to sell Russian vodka in the United States under the STOLICHNAYA brand label. For purposes of their summary judgment motion, plaintiffs are seeking solely injunctive relief enjoining the Allied Domecq Defendants and their agents from using, licensing, assigning other than to FTE, or selling the STOLICHNAYA marks. (Sec. Am. Compl. ¶ 174; Pls.' Mem. Supp. Mot. for Summ. J., at 19, n.16 ("Plaintiffs' Motion for Summary Judgment does not seek judgment as to damages, costs and attorneys' fees, or other available remedies.")).

30

The Allied Domecq Defendants submit that the vodka that it sells in the United States is from the Russian Federation. As such, they contend, it may be called "Russian Vodka." They claim that since an issue of fact exists, as to whether Allied Domecq's product originates in Russia, summary judgment in plaintiffs' favor is precluded.

Beyond the existence of disputed issues of fact, the relief they are seeking is unavailable. Plaintiffs claim that, as competitors who sell or intend to sell Russian vodka in the United States, they are likely to be injured by Allied Domecq's allegedly falsely advertising that its product is made in Russia. As previously noted the term "STOLICHNAYA" does not indicate that Russia is the country of origin so as to confuse or mislead consumers in this regard. Thus, plaintiffs are not entitled to injunctive relief enjoining Allied Domecq's from using the marks to which they possess incontestable ownership.

The other phrases to which plaintiffs find objectionable clearly refer to Russia, *i.e.*, "Russian Vodka," "Genuine Russian Vodka," "Product of Russia," "Imported Russian Vodka," "The Russian Phenomenon," and "Distilled in Russia." However, plaintiffs are not seeking to enjoin Allied Domecq from continuing to use such phrases in their advertising. Any competitive or commercial injury allegedly suffered by plaintiffs would not be vitiated by enjoining Allied Domecq from using the STOLICHNAYA marks, but nevertheless allowing them to specifically advertise that their product is Russian vodka. Since the relief sought by plaintiffs, for purposes of their summary judgment motion, was limited to enjoining Allied Domecq from using the STOLICHNAYA marks, the motion is denied.[19]

---

[19]Similarly, plaintiffs seek, under similar allegations, the same inappropriate remedy in Claim 5, their unfair competition claim against the Allied Domecq Defendants. Plaintiffs allege

## CONCLUSION

Plaintiffs' motion for summary judgment on Claim 13 is denied. The defendants'

respective motions to dismiss are granted.[20]

Dated: New York, New York
March 31, 2005

SO ORDERED:

*George B. Daniels*

GEORGE B. DANIELS
United States District Judge

---

that the Allied Domecq Defendants' acts are "misleading in a material way, as Defendants' STOLICHNAYA label provides a false description of the geographic origin of the goods distributed under that label. (Sec. Am. Compl. ¶ 132). Plaintiffs cannot, under this theory, obtain an injunction enjoining Allied Domecq's use of the STOLICHNAYA marks.

[20]After the submissions of the instant motions, plaintiffs filed a motion for summary judgment on Claims 1, 6, 11, and 15, and alternatively, for partial summary judgment on the Claim 1 ("Plaintiffs' Second Motion for Summary Judgment"). Because the Court granted defendants' motions to dismiss on these claims, Plaintiffs' Second Motion for Summary Judgment is rendered moot. Plaintiffs Second Motion for Summary Judgment is therefore dismissed.