

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

FEDERAL TREASURY ENTERPRISE
SOJUZPLODOIMPORT and OAO "MOSCOW
DISTILLERY CRISTALL",

                        Plaintiffs,

v.

SPIRITS INTERNATIONAL B.V.,
FORMERLY KNOWN AS SPIRITS
INTERNATIONAL N.V.; SPI SPIRITS
LIMITED; SPI GROUP SA; YURI SHEFLER;
ALEXEY OLIYNIK; ALLIED DOMECQ
INTERNATIONAL HOLDINGS B.V.;
ALLIED DOMECQ SPIRITS & WINES USA,
INC., d/b/a ALLIED DOMECQ SPIRITS,
USA; WILLIAM GRANT & SONS USA; and
WILLIAM GRANT & SONS, INC.

                        Defendants.

MEMORANDUM DECISION
AND ORDER

04 CV 08510 (GBD)

GEORGE B. DANIELS, District Judge:

      Plaintiffs the Russian Federal Treasury Enterprise Sojuzplodoimport ("FTE") and OAO "Moscow Distillery Cristall" ("Cristall") brought this action against Defendants Spirits International B.V., formerly known as Spirits International N.V., SPI Spirits Limited, SPI Group SA, Yuri Shefler, and Alexey Oliynik (collectively, the "SPI Defendants"); Defendants Allied Domecq International Holdings B.V. and Allied Domecq Spirits & Wines USA, Inc., D/B/A Allied Domecq Spirits, USA (collectively, the "Allied Defendants"); and Defendants William Grant & Sons USA; and William Grant & Sons, Inc. (collectively, the "William Grant Defendants"), arising from the alleged unlawful misappropriation and unauthorized commercial exploitation of the American trademarks for STOLICHNAYA (hereinafter, the "Marks") from January 2001 until August 2008. Plaintiffs assert claims for (Claim 1) federal trademark

1

infringement under 15 U.S.C. § 1114(1) and (Claim 6) misappropriation against all Defendants; and for (Claim 2) contributory federal trademark infringement under 15 U.S.C. § 1114(1) against the SPI Defendants. Plaintiff FTE asserts claims for (Claim 3) declaratory relief under 28 U.S.C. § 2201(a), (Claim 4) rectification of register under 15 U.S.C. § 1119, and (Claim 5) cancellation of marks under 15 U.S.C. § 1119 against all Defendants. The SPI Defendants, Allied Defendants, and William Grant Defendants separately moved to dismiss the claims against them for lack of subject matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1) and for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6). The motions to dismiss are GRANTED.

## BACKGROUND[1]

This action was originally commenced by FTE and Obschestvo S. Ogranichennoi Otvetstvennost'yu Chernogolovski Alkogol'noi Produkcii "Ost Alco" against the Allied Defendants and the SPI Defendants. In the Second Amended Complaint, FTE and Ost Alco asserted claims for: declaratory judgment (Claim 1), cancellation of marks (Claim 10), and rectification of register (Claim 15). Plaintiffs also alleged federal claims of unfair competition (Claim 5), trademark infringement (Claims 6 and 11), trademark dilution (Claims 7 and 12), false designation of origin (Claims 8 and 13), and copyright infringement (Claim 14). The Second Complaint also asserted state common law claims for fraud (Claims 2 and 9), unjust enrichment (Claim 3), and misappropriation (Claim 4). This Court previously granted Defendants' motions to dismiss, and denied FTE and OST-ALCO's motions for summary judgment in the

---

[1] This Court presumes familiarity with the alleged facts and circumstances surrounding the transfer of the United States trademarks for STOLICHNAYA. See Fed. Treasury Enter. Sojuzplodoimport v. Spirits Int'l N.V., 400 Fed. Appx. 611 (2d Cir. Nov. 24, 2010); Fed. Treasury Enter. Sojuzplodoimport v. Spirits Int'l N.V., 623 F.3d 61 (2d Cir. 2010); Fed. Treasury Enter. Sojuzplodoimport v. Spirits Int'l N.V., 425 F. Supp. 2d 458 (S.D.N.Y. 2005).

Memorandum and Decision dated March 31, 2006. See Fed. Treasury, 425 F. Supp. 2d at 465.[2] All claims were dismissed except for Claims 5 and 13 against the Allied Defendants.

FTE and Zakrytoe Akisionernoe Obschestvo "Liviz"[3] voluntarily dismissed the remaining parts of Claims 5 and 13, and appealed this Court's Memorandum and Decision dated March 31, 2006. The Second Circuit affirmed in part and vacated and remanded in part. See Fed. Treasury Enter. Sojuzplodoimport v. Spirits Int'l N.V., 400 Fed. Appx. 611 (2d Cir. Nov. 24, 2010) (affirming dismissal of Claims 2, 3, and 9); Fed. Treasury Enter. Sojuzplodoimport v. Spirits Int'l N.V., 623 F.3d 61 (2d Cir. 2010) (vacating dismissal of Claims 1, 4-8, and 10-15, and 15 and remanding for further proceedings).[4]

---

[2] Claims 1, 6-8, 10-12, and 15 were dismissed because "Allied Domecq [held] an incontestible ownership right to the STOLICHNAYA mark in the United States," "incontestible federal registration constitutes 'conclusive evidence' of ownership of the STOLICHNAYA mark," and "FTE ha[d] not stated a proper statutory claim upon which it may challenge the transfer of that incontestable ownership of the STOLICHNAYA registration." Fed. Treasury, 425 F. Supp. 2d. at 466-71. Claim 4 was dismissed because "plaintiffs have no ownership interest in the United States trademarks alleged to have been misappropriated." Id. at 472. Claim 14 was dismissed because "under Section 104A of the Copyright Act, defendants are entitled to proper notice of a foreign rightholder's intent to enforce a restored copyright and to a 12-month grace period in which to dispose of existing copies before an infringement claim may be brought," and "Plaintiffs have not provided the notice required by Section 104A." Id. at 472-73. Claims 2 and 9 were dismissed because "the Second Amended Complaint merely alleges that this transfer occurred at the initial 'privatization' of VVO-SPI," but "do not allege that the corporate or individual SPI Defendants had anything to do with this 'conspiracy' or had knowledge of any defect in the privatization process." Id. at 473-74. Claim 3 was dismissed because "plaintiffs have not alleged that defendants' profits were gained at plaintiffs' expense" in light of the fact that their rights were limited to use the Russian STOLICHNAYA trademarks. Id. at 475. Part of Claim 5 was dismissed because "Plaintiffs do not allege in these paragraphs that the SPI Defendants have falsely advertised the vodka or otherwise committed any deceptive acts or practices in the conduct of any business or in furnishing any service in New York, as is required under the statute." Id. at 475-76.

[3] OST-ALCO was substituted for Zakrytoe Akisionernoe Obschestvo "Liviz" by stipulation of the parties.

[4] The Second Circuit determined that "[a]lthough the Lanham Act does construe the term 'registrant' to 'embrace[]' 'assignees,' . . . the district court read too much into this very general statement by effectively concluding that any recorded assignment of an incontestable registration cannot be challenged." Fed. Treasury, 623 F.3d at 68-69. The Second Circuit thus "determined that the question of the validity of the assignment is antecedent to the question of incontestability" because "if at the end of the day FTE is able to prove that its marks were unlawfully assigned, then the district court would be obligated to consider appropriate relief." Id. at 69. The Second Circuit held that "federal courts may, applying the relevant law, adjudicate the ownership of a trademark as part of an infringement claim" and thus "[the FTE's complaint] properly invokes federal jurisdiction." Id.

B.  **THIRD AMENDED COMPLAINT**

The parties stipulated to suspending Defendants' obligation to answer or otherwise respond to the Second Amended Complaint in light of Plaintiffs' intention to file a Third Amended Complaint. See Docket # 132. The factual allegations of Third Amended Complaint (hereinafter, the "TAC") are substantially similar to those of the Second Amended Complaint. The major differences are that fewer claims (6) are now asserted, the alleged chain of unlawful transfers is updated, and the Cristall Plaintiff and William Grant Defendants[5] are added as named parties.

## STANDARDS OF REVIEW

A.  **12(b)(1) MOTION**

"[A] claim is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." Morrison v. Nat'l Austl. Bank Ltd., 547 F.3d 167, 170 (2d Cir. 2008). "A plaintiff asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists." Makarova v. United States, 201 F.3d 110, 113 (2d Cir. 2000); see also Whitmore v. Arkansas, 495 U.S. 149, 154 (1990) ("It is well established . . . that before a federal court can consider the merits of a legal claim, the person seeking to invoke the jurisdiction of the court must establish the requisite standing to sue."). At the pleading stage, the court must "accept as true all material facts alleged in the complaint and draw all reasonable inferences in the plaintiff's favor." Conyers v. Rossides, 558 F.3d 137, 143 (2d Cir. 2009); accord NRDC v.

---

[5] The William Grant Defendants are the current distributors of vodka bearing the Marks in the United States, and have been so since the December 15, 2009 agreement with Spirits International's parent SPI Group S.A. TAC ¶¶ 4, 106-112.

Johnson, 461 F.3d 164, 171 (2d Cir. 2006) ; see also Warth v. Seldin, 422 U.S. 490, 501 (1975); Morrison, 547 F.3d at 170; London v. Polishook, 189 F.3d 196, 199 (2d Cir. 1999) ("[I]t is the affirmative burden of the party invoking [federal subject matter] jurisdiction ... to proffer the necessary factual predicate - not just an allegation in a complaint - to support jurisdiction.") (citations omitted). "[W]here jurisdictional facts are placed in dispute, the court has the power and obligation to decide issues of fact by reference to evidence outside the pleadings, such as affidavits." LeBlanc v. Cleveland, 198 F.3d 353, 356 (2d Cir. 1999); see also JS. v. Attica Cent. Schs., 386 F.3d 107, 110 (2d Cir. 2004) (noting that the court "may not rely on conclusory or hearsay statements contained in the affidavits")

**B.     12(b)(6) MOTION**

"To survive a motion to dismiss [under Rule 12(b)(6)], a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that it is plausible on its face.'" Ashcroft v. Iqbal, S. Ct. 1937, 1949 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). This standard is met "when the Plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. A court should not dismiss a complaint for failure to state a claim if the factual allegations sufficiently "raise a right to relief above the speculative level." Twombly, 550 U.S. at 555.

The task of the court in ruling on a motion to dismiss is to "assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof." In re Initial Pub. Offering Sec. Litig., 383 F. Supp. 2d 566, 574 (S.D.N.Y. 2005) (internal quotation marks and citations omitted). The court must accept all well-pleaded factual allegations in the complaint as true, and draw all reasonable inferences in the Plaintiff favor. See

5

Chambers v. Time Warner, Inc., 282 F.3d 147, 152 (2d Cir. 2002). In deciding a motion to dismiss, the Court is not limited to the face of the complaint. The court "may [also] consider any written instrument attached to the complaint, statements or documents incorporated into the complaint by reference . . . , and documents possessed by or known to the plaintiff and upon which it relied in bringing the suit."

## SUBJECT MATTER JURISDICTION

Standing directly implicates the issue of subject matter jurisdiction. See Cent. States Se. & Sw. Areas Health and Welfare Fund v. Merck-Medco Managed Care, L.L.C., 433 F.3d 181, 198 (2d Cir. 2005) ("Under Article III of the Constitution, federal courts have jurisdiction only over 'Cases' and 'Controversies.' Standing 'is an essential and unchanging part of the case-or-controversy requirement of Article III.' If plaintiffs lack Article III standing, a court has no subject matter jurisdiction to hear their claim.") (citing U.S. Const. art. III, § 2, cl. 1; Lujan v. Defenders of Wildlife, 504 U.S. 555, 560 (1992)); accord Altman v. Bedford Cent. Sch. Dist., 245 F.3d 49, 69 (2d Cir.) ("The Constitution limits the jurisdiction of Article III courts to matters that present actual cases or controversies. This limitation means that when a plaintiff brings suit in federal court, she must have standing to pursue the asserted claims.") (internal citation omitted), cert. denied, 534 U.S. 827 (2001). Here, the SPI Defendants argue that Plaintiffs lack statutory standing under Section 32(1) of the Lanham Act to sue for Claims 1 through 5. The SPI Defendants also argue that Plaintiffs lack standing to sue under New York law for Claim 6, or, in the alternative, are not entitled to the exercise of supplemental jurisdiction by this Court.

### A. PLAINTIFFS' STANDING ALLEGATIONS AND EVIDENCE

Plaintiffs allege that, on December 29, 2001, the Russian Federation founded Plaintiff FTE "based on the right of operative administration." TAC, Ex. M; see also TAC ¶¶ 133-134.

Plaintiff FTE's charter dated March 11, 2002, entrusted it with authority to, among other things, "export and import . . . all types of strong and soft drinks" and "us[e] in accordance with established procedure the trade marks of strong drinks, alcoholic products and other foodstuffs." TAC, Ex. N 11(c) and (i); see also TAC ¶¶ 135-136.  Plaintiffs allege that, "[a]s a consequence, FTE is now the holder of the STOLICHANYA trademarks in Russia and many other countries, including the United States, and therefore FTE is the only entity with the right to use and dispose of the Marks, albeit with some restrictions due to the Russian Federation's ultimate ownership of both FTE and the Marks." TAC ¶ 136.

Plaintiffs contend that the Russian Federation has expressly affirmed Plaintiff FTE's authority over the STOLICHNAYA trademarks.  For example, on July 4, 2002, the Russian Federation issued a decree stating that Plaintiff FTE "had the right to use and dispose (without the right to assign) the STOLICHNAYA trademark *in Russia*." TAC ¶ 139 (emphasis added); see also TAC, Ex. O.  On January 6, 2005, after the commencement of the present litigation, the Russian Federation issued a decree charging Plaintiff FTE to "represent the interests of the Russian Federation in the courts on matters of recovery and protection of the rights of the Russian Federation to the trademarks for alcoholic products abroad" and "realize registration of the rights of the Russian Federation to the mentioned trademarks abroad." TAC, Ex. P; see also TAC ¶ 140.  "Subsequent decrees . . . have continued to confirm FTE's authority." TAC ¶ 140.

Based upon documents produced for the first time in opposition to the motion to dismiss,[7] Plaintiffs also contend that Plaintiff FTE's authority over the STOLICHNAYA trademarks and to bring the instant action has been affirmed by the Russian Federation.  In a

---

[7] Plaintiffs have produced both the original versions of the Russian-language documents and the English translations.

letter dated May 25, 2011, the Federal Agency for the Management of State Property stated that:

> FTE . . . shall be entitled to act in its own name entering into different contracts and conducting other commercial activities including those connected with use of the trademarks including export of alcohol-containing products bearing the trademarks, and also to participate in its own name in court proceedings, i.e. to be plaintiff and defendant in court proceedings both in Russian and abroad. . . . FTE . . . acting in the interests of the Russian Federation in its own name has any and all authority necessary to address courts in the United States with regard to any claims related to restoration and/or protection of rights for the abovementioned trademarks including any claims for damages in accordance with US law.

Declaration of Marc L. Greenwald, Ex. F, at 1-2. In a letter dated May 26, 2011, the Federal Service for the Regulation of the Alcohol Market made almost identical assertions regarding FTE's authority. Greenwald Decl., Ex. G, at 1.

## B.  FEDERAL TRADEMARK CLAIMS

Only a "registrant" may bring a civil action for trademark infringement under Section 32(1) of the Lanham Act, 15 U.S.C. 1114(1). 15 U.S.C. 1114(1) ("Any person who shall, without the consent of the registrant . . [commit any of several infringement offenses] shall be liable in a civil action by the registrant for the remedies hereinafter provided."). The term "registrant" is defined to include the owner of the trademark who request registration of its trademark, as well as the "legal representatives, predecessors, successors, and assignees" of the owner/registrant. 15 U.S.C. 1051 and 1127. The SPI Defendants, joined by the Allied Defendants and the William Grant Defendants, contend that Plaintiffs do not qualify as owners/registrants, assignees, or legal representatives of the Marks. Although Plaintiffs seek a declaratory judgment that Plaintiff FTE is the rightful owner and holder of the trademark, Plaintiffs concede that they are not the owners or registrants of the STOLICHNAYA trademarks.[8] They contend, however, that the Russian Federation conferred upon them rights

---

[8] See Plaintiffs' Opp. Mem., at 11 ("The Complaint alleges that the Russian Federation, which is the *ultimate* owner of the Marks, has entrusted FTE with broad rights to use and dispose of the Marks. Those rights qualify FTE for purposes of the Lanham Act as both an assignee and a "legal representative . . . .") (emphasis in original) (internal citations omitted); see also TAC 78 ("The Government of the Russian Federation [is] the

8

with respect to the Marks that provide them standing to sue under Section 32(1).

### 1. Legal Representative[9]

The term "legal representative" is not defined by the Lanham Act or the related legislative history, and the Court of Appeals for the Second Circuit has yet to address the issue. The SPI Defendants rely upon recent district court opinions – namely, Nat'l Licensing Ass'n, LLC v. Inland Joseph Fruit Co., 361 F. Supp. 2d 1244 (E.D. Wash. 2004),[10] and Krasnyi Oktyabar, Inc. v. Trilini Imports, 578 F. Supp. 2d 455 (E.D.N.Y. 2008)[11] – to argue in favor of a restrictive or narrow requirement. The SPI Defendants contend that a legal representative for

---

successor to the Soviet Union and therefore . . . *the true owner* of the STOLICHNAYA trademarks . . . .") (emphasis added); TAC 132 ("Acting through the Ministry of Agriculture and the Ministry of Property Relations, *the Russian Federation's ultimate ownership of both fte and the Marks*") (emphasis added); TAC 136 ("FTE is the only entity with the right to use and dispose of the Marks, albeit with some restrictions due to the *Russian Federation's ultimate ownership of both FTE and the Marks*.") (emphasis added).

[9] Only Plaintiff FTE claims to be a legal representative.

[10] The district court found that a collective enforcement type entity with an assigned right to sue for infringement lacked standing, explaining that:

> . . . Congress [n]ever intended the scope of the term "legal representative" in this context to embrace an entity such as [plaintiff]. Although the term "legal representative" is not defined by the Act, such a novel construction of the term would be inconsistent with the obvious intention to limit trademark infringement suits to those [who] have or had ownership interests in the trademark and the historically restrictive interpretation given to "registrant." Furthermore, it is contrary to the ordinary meaning of the term, i.e. one who appears on behalf of a party *who is otherwise unable or incapable of doing* so, for example a guardian of a minor or an administrator of an estate. There is no allegation that such is the case here, nor can the court find that [plaintiff] has asserted an interest in the trademarks even akin to the interests of the trademark registrant or its assignee.

Nat'l Licensing, 361 F. Supp. 2d at 1255 (emphasis in original).

[11] The district court found that a licensee that assigned its distribution rights and was authorized by the registrant/owner to bring claims on its behalf lacked standing. The district court relied upon Nat'l Licensing over a broader definition, and found that Plaintiff had failed to make the requisite showing for nonjoinder of a necessary party under Fed. R. Civ. P 19:

> Even if plaintiff could demonstrate damages incurred by [the registrant/owner], its standing claim still fails because it has not provided a reason why [the registrant/owner], the real party at interest, cannot participate in the litigation. Fed. R. Civ. P. 19(a)(1) provides that if joinder is feasible a party must be joined . . . . Plaintiff has neither demonstrated that defendant's case has not been impaired by their potential difficulty in obtaining discovery from [the registrant/owner], a foreign third-party, nor shown that [the registrant/owner] cannot bring subsequent infringement claims against defendants.

Krasnyi, 578 F. Supp. 2d at 465.

9

Section 32(1) purposes should be limited to the ordinary meaning of the term of one who appears on behalf of a party who is otherwise unable or incapable of doing so. Plaintiff FTE disagrees. Relying upon the interpretation of parallel language in the Patent Act, the third edition of Black's Law Dictionary, Potato Commission v. Washington Potato Commission, 410 F. Supp. 171 (D. Idaho 1976),[12] and Congress's ability to expressly impose precise requirements, Plaintiff FTE argues in favor of a broad interpretation. Plaintiff FTE contends that a legal representative for Section 32(1) purposes should include any legally authorized agent.

Absent explicit guidance from the Second Circuit, this Court adopts the narrow requirement. That is, a party qualifies as a legal representative under Section 32(1) of the Lanham Act if the party has the authority to appear on behalf of the registrant/owner with respect to the registrant/owner's legal interests *and* the registrant/owner is unable or incapable of representing itself and enforcing its own rights. Plaintiff FTE has not provided a persuasive argument to depart from what this Court considers to be the plain and ordinary meaning of the term "legal representative."[13] Moreover, the broad approach advocated by Plaintiff FTE would render superfluous the well-established legal distinction for standing purposes between an agent

---

[12] The district court permitted an entity entrusted with supervision and control over the trademark to pursue infringement litigation because it was "one who stands in the place of and represents the interests of another." Potato Commission, 410 F. Supp. 174. This position was also adopted in Visa U.S.A., Inc. v. First Data Corp., 2005 U.S. Dist. LEXIS 37276 (N.D. Cal. Aug. 16, 2005). The district court in Nat'l Licensing commented on Potato Commission by stating that: "[T]he court is aware of one trademark case with far different facts than those presented here, wherein the term "legal representative" was in fact given the broad interpretation that NLA advances. The court does not find the District of Idaho's construction of the statute authoritative in this context." Nat'l Licensing, 361 F. Supp. 2d at 1255n.11 (internal citations omitted).

[13] The Patent Act provision identified by Plaintiff FTE addresses who may assign rights under a patent or patent application (i.e. "[t]he applicant, patentee, or his assigns or legal representatives"), not who may claim to be the owner/registrant of a patent or assert infringement claims. The current version of Black's Law Dictionary offers Plaintiff FTE's definition for the term "representative," not the term "legal representative." Potato Commission is a single case wherein the presiding court applied Plaintiffs' definition, and is not controlling law. Finally, Congress's failure to define the term "legal representative" suggests it is appropriate to apply the plain and ordinary meaning of the term.

or representative and a legal representative.[14]

Applying the narrow requirement for the term "legal representative," Plaintiff FTE has failed to establish its status as a legal representative for the Russian Federation through its pleadings or evidence. Plaintiff FTE has demonstrated that it is an agent or representative for the Russian Federation in relationship to use and protection of the Marks. Plaintiff FTE has failed, however, to demonstrate that the circumstances under which it has status as agent qualifies it to assert claims in U.S. federal courts on behalf of the Russian Federation. The Russian Federation's standing to pursue the Lanham Act claims at issue is not transferred to Plaintiff FTE by virtue of the fact that Plaintiff FTE has permission to pursue this litigation in its own name from and at the convenience of the Russian Federation. Plaintiff FTE must provide – and yet has failed to do so – an explanation of the need for it to pursue this litigation in its own name on behalf of the Russian Federation, which is the real party in interest whose alleged ownership rights are implicated by this action. There is no explanation why, nor even an asserted contention that the Russian Federation is unable to appear in this Court on its own behalf. It is neither obvious from the face of the TAC, nor can it be assumed, that the Russian Federation is unable or incapable of representing its own rights. Plaintiff FTE's allegation that "Russian law does not permit government bodies . . . to conduct business activities" simply does not address

---

[14] It is well-established law that a legal representative is different from a mere agent. A mere agency relationship has been expressly declared insufficient to satisfy the injury-in-fact requirement for constitutional standing. See W.R. Huff Asset Mgmt. Co. v. Deloitte & Touche LLP, 549 F.3d 100, 107-08 (2d Cir. 2008) ("[A] mere power-of-attorney--i.e., an instrument that authorizes the grantee to act as an agent or an attorney-in-fact for the grantor--does not confer standing to sue in the holder's own right because a power-of-attorney does not confer an ownership interest in the claim.") (citing Vermont Agency of Natural Res. v. United States ex rel. Stevens, 529 U.S. 765, 773, 120 S. Ct. 1858, 146 L. Ed. 2d 836 (2000)); accord Advanced Magnetics, Inc. v. Bayfront Partners, Inc., 106 F.3d 11, 17-18 (2d Cir. 1997) ("A provision by which one person grants another the power to sue on and collect on a claim confers on the grantee a power of attorney with respect to that claim," but "[t]he grant of a power of attorney . . . is not the equivalent of an assignment of ownership; and standing alone, a power of attorney does not enable the grantee to bring suit in his own name."). A party may only stand in the place of the injured party and satisfy the constitutional requirement of an "injury-in-fact" when, at a minimum, "the plaintiff have legal title to, or a property interest in, the claim." W.R. Huff, 549 F.3d at 108.

the issue at hand. Thus, Plaintiff FTE cannot as a matter of law qualify as legal representative.

Even if Plaintiff FTE could qualify as a legal representative for the Russian Federation, the TAC clearly demonstrates that Plaintiff FTE's claims are not being asserted in such a representative capacity. Plaintiff FTE, as a legal representative for the Russian Federation, may only assert claims on behalf of and recover damages incurred by the Russian Federation. Claims personal to Plaintiff FTE are not permitted because Plaintiff FTE lacks independent ownership rights. Yet, it is clear from the TAC that Plaintiff FTE seeks relief for itself and judgment in its favor.[15] The TAC states that Plaintiffs "bring this action against defendants . . . on personal knowledge as to their own conduct and upon information and belief as to the conduct of others" and the caption lists only the names of Plaintiffs, making no mention of or reference to their alleged status as a legal representative for the Russian Federation. TAC, pg. 1. The TAC also repeatedly states as the prayer for relief that "FTE seeks a declaration that it was and is the true holder of the Marks" and that "FTE seeks to have the registrations of the Marks corrected on the Federal Register . . . so that FTE is the holder of the Marks." TAC ¶¶ 155, 157; see also TAC ¶ 160 ("FTE seeks an order . . . certifying that FTE is the true holder of the marks and ordering a correction to the Federal Register to reflect FTE as the holder of said marks."); TAC, Prayer for Relief (Plaintiffs seek "a declaration that FTE is the rightful owner of the original STOLICHNAYA trademark," "an order . . . to correct the Principal Register to accurately reflect that ownership," and "Plaintiffs' damages . . . in amount sufficient to punish Defendants and deter others.").

---

[15] Fed. R. Civ. P. 17(a)(1)(G) permits an action brought by "a party authorized by statute" to "sue in [its] own name[]." The Rule does not authorize Plaintiffs to recover *in their own name* relief to which the Russian Federation would be entitled as the real party in interest.

12

Notably, the TAC states that Plaintiffs "bring this action against defendants . . . on personal knowledge as to their own conduct and upon information and belief as to the conduct of others," making no mention of their allege representative relationship to the Russian Federation. TAC, pg. 1.

### 2. Assignee[16]

Plaintiff FTE argues that it qualifies as an assignee under the Lanham Act because the Russian Federation has given it an ownership interest in the Marks, including unrestricted rights to use and enforce the Marks. "[A]ssignment of a trademark under the Lanham Act requires (1) sale or transfer of all rights in the mark; and (2) assignment as well of the business's goodwill connected with the mark's use." Prince of Peace Enters. v. Top Quality Food Mkt., LLC, 760 F. Supp. 2d 384, 391 (S.D.N.Y. 2011) (citing 3 McCarthy on Trademarks and Unfair Competition § 18:1 (4th ed.); other citation omitted); see also 15 U.S.C. § 1060(a)(1). Assignments must also be evidenced by a writing. 15 U.S.C. § 1060(a)(3). The TAC does not expressly allege that Plaintiff FTE is the assignee of the Russian Federation's ownership rights in the Marks. Nor do the factual allegations in the TAC or the evidence produced by Plaintiffs indicate that the Russian Federation ever transferred all of its rights in the Marks to either Plaintiff. To the contrary, the TAC repeatedly states that the Russian Federation is the "true owner" of the Marks. Additionally, the present record lacks any reference to a duly executed writing that purports to convey title or ownership of the Marks to another. Thus, Plaintiff FTE is not as a matter of law an assignee.

Nevertheless, "[i]n unique situations, an exclusive licensee *may* be considered an

---

[16] Plaintiff FTE claims to be the assignee of the Russian Federation. Plaintiff Cristall claims to be a proper co-plaintiff as an exclusive licensee to whom Plaintiff FTE has given the exclusive right to produce STOLICHNAYA vodka for sale in the United States.

assignee pursuant to 15 U.S.C. § 1127's definition of registrant." Krasnyi Oktyabr, Inc. v. Trilini Imps., 2007 U.S. Dist. LEXIS 23733, at *8 (E.D.N.Y. Mar. 29, 2007) (citing Fin. Inv. Co. v. Geberit AG, 165 F.3d 526, 531-32 (7th Cir. 1998)) (emphasis added). "[A] truly exclusive licensee, one who has the right even to exclude his licensor from using the mark . . . is equated with an assign[ee] since no right to use [the mark] is reserved to the licensor, and the licensee's standing derives from his presumed status as assignee." Id. at *8-9 (same). "[A]n exclusive licensee only has standing if the licensing agreement grants the licensee a property interest in the mark or otherwise assigns to the licensee the registrant-licensor's ownership rights." Telebrands Corp. v. Del Labs., Inc., 719 F. Supp. 2d 283, 293 (S.D.N.Y. 2010) (quoting Calvin Klein Jeanswear Co. v. Tunnel Trading, 2001 U.S. Dist. LEXIS 18738, at *15) (S.D.N.Y. Nov. 16, 2001)) (internal quotation marks omitted); see also Calvin Klein, 2001 U.S. Dist. LEXIS 18738, at *15 (citing DEP Corp. v. Interstate Cigar Co., 622 F.2d 621, 621 (2d Cir. 1980) (denying standing to exclusive distributor where agreement expressly stated distributor had no claim of right to mark); Fin. Inv. Co., 165 F.3d at 532 (denying standing to exclusive licensee where licensing agreement set forth many duties and rights inconsistent with an assignment, such as geographic limitations on the licensee's territory); Gruen Marketing Corp. v. Benrus Watch Co., 955 F. Supp. 979, 983 (N.D. Ill. 1997) (holding that licensing agreement was not assignment where agreement reserved many rights to licensor and stated that licensor was "owner of all right, title and interest in and to [the mark]"); see also Silverstar Enters., Inc. v. Aday, 537 F. Supp. 236, 240 (S.D.N.Y. 1982) (finding that the licensor retained ownership where licensing agreement contained clause that "[l]icensee and all parties . . . acknowledge the licensor's exclusive right, title and interest in and to the [marks]")). "Courts have found that a licensee has no property interest where (1) the license agreement imposes geographical limitations on the use

14

of the trademark; (2) the licens[e] agreement requires the licensee to maintain the trademark's quality and reserves [to the licensor] the right to monitor the licensee's product quality; (3) the rights and duties in the license agreement are inconsistent with an assignment; [or] (4) the license agreement states that the licensor retains ownership of the trademark." Experian Mktg. Solutions, Inc. v. U.S. Data Corp., 2009 U.S. Dist. LEXIS 82075 (D. Neb. Sept. 9, 2009) (citations omitted).

Plaintiff FTE contends that it has broad rights over the Marks because the Russian Federation conferred upon it exclusive rights to use and dispose of the Marks without imposing any restriction on its rights. However, Plaintiff FTE's allegations are insufficient. The operative agreement under which the Russian Federation purportedly conferred licensing rights upon Plaintiff FTE is the March 11, 2002 Charter. TAC, Ex. N. The charter confers upon Plaintiff FTE the right to use and dispose of "trade marks of strong drinks" without distinguishing between or specifically making reference to the STOLICHNAYA Marks registered in Russia and the STOLICHNAYA Marks registered in the United States. TAC, Ex. N, ¶ 11. The charter does not explicitly exclude the Russian Federation or any other party from having rights in the Marks, and Plaintiffs have provided no legal basis to conclude that such a characteristic is inherent to any grant of a right of operative administration. The charter indicates in clear and unambiguous language that Plaintiff FTE's rights are neither tantamount to ownership, nor sufficient to permit Plaintiff FTE to exclude the Russian Federation from taking action with respect to the Marks.

The charter expressly states that the Russian Federation is the owner of all rights in the Marks and imposes restrictions on Plaintiff FTE's rights that permit the Russian Federation to "police the trademark." See, e.g., TAC, Ex. N, IIII. Property of Enterprise ("property . . . shall

be in federal ownership and shall be assigned thereto in accordance with established procedure for operative administration"; "products and incomes from use of the property . . . shall be in federal ownership and shall be transferred to the Enterprise for operative administration"; FTE "shall not be entitled to alienate or otherwise dispose of the property . . . except with the consent of the federal executive authorities"; and the Russian Federation "shall be entitled to impound any property assigned to the Enterprise that is excessive, is not used at all or is not used in conformity with its purpose."). In fact, Plaintiff FTE is "not . . . entitled to carry on activities which are not provided for by [the] Charter." TAC, Ex. N, ¶ 12. Therefore, pursuant to the charter, Plaintiff FTE lacks truly exclusive rights to the STOLICHNAYA Marks. See, e.g., Prince of Peace Enters. v. Top Quality Food Mkt., LLC, 760 F. Supp. 2d 384, 394 (S.D.N.Y. 2011); G&F Licensing Corp. v. Field & Stream Licenses Co., LLC, 2010 U.S. Dist. LEXIS 73637 (S.D.N.Y. July 16, 2010); Telebrands Corp. v. Del Labs., Inc., 719 F. Supp. 2d 283, 293 (S.D.N.Y. 2010); Trump Plaza of the Palm Beaches Condo. Ass'n v. Rosnethal, 2009 U.S. Dist. LEXIS 54450 (S.D. Fla. June 24, 2009); Shell Co. v. Los Frailes Serv. Station, Inc., 596 F. Supp. 2d 193, 202 (D.P.R. 2008); Brooklyn Bottling of Milton, New York, Inc. v. Ecuabeverage Corp., 2008 U.S. Dist. LEXIS 15906 (S.D.N.Y. Mar. 3, 2008); Krasnyi Oktyabr, Inc. v. Trilini Imps., 2007 U.S. Dist. LEXIS 23733 (E.D.N.Y. Mar. 29, 2007). Thus, Plaintiffs are not de facto assignees. Accordingly, both Plaintiffs lack standing to sue for the Lanham Act claims as assignees.

### 3. Lanham Act Claims Are Dismissed

Accordingly, Claim 1 (federal trademark infringement), against all Defendants, and Claim 2 (contributory trademark infringement), against the SPI Defendants, are DISMISSED. Having failed to qualify as either legal representatives or assignees of the Russian Federation,

Plaintiffs lack standing to sue under Section 32(1).[17] Claims 3 (rectification of the register), 4 (cancellation of a registration), and 5 (declaratory judgment of ownership), asserted against all Defendants, are also DISMISSED. Absent standing to establish a controversy as to the validity of or interference with a registered trademark, Plaintiff FTE cannot establish standing for ownership-bolstering remedies available under the Lanham Act.[18]

## C. COMMON LAW MISAPPROPRIATION CLAIM

Subject matter jurisdiction in the instant action is predicated upon federal question jurisdiction. See TAC ¶ 7. Having failed to state a federal cause of action, this Court declines to exercise supplemental jurisdiction over Plaintiffs' remaining common law claim for misappropriation. See United Mine Workers v. Gibbs, 383 U.S. 715, 726 (1966) ("Certainly, if the federal claims are dismissed before trial ... the state claims should be dismissed as well."); see also 28 U.S.C. § 1367(a), (c) ("The district courts may decline to exercise supplemental

---

[17] The Second Circuit in its Mandate raised the question of whether an indispensable party is missing, stating that: "[W]e observe that the complaint, and the exhibits attached to it, raise the question of whether there are absent, required parties, pursuant to Federal Rule of Civil Procedure 19, and, if so, whether joinder of those parties is feasible. . . . After considering the parties' supplemental briefing on this issue, we are unable still to discern on the present record whether FGUP is a required party. . . . On remand, we leave it to the district court to determine, in the first instance, whether the required parties are before it." Docket # 135, at 5-6. Clearly, the Russian Federation is an indispensable party. By this artificially constructed litigation, the Russian Federation as a nonparty has shielded itself from the obligations of producing discovery as a party and any final binding determination or judgment adverse to its claims of right.

[18] Furthermore, Plaintiffs cannot as a matter of law state a claim against either the William Grant or Allied Defendants for Claims 3, 4, and 5. These defendants do not claim to have any present ownership interest in the Marks, and Plaintiffs have not made any allegations to the contrary. Thus, with respect to Claim 3, there is not an actual controversy necessitating a declaration of rights. With respect to Claims 4 and 5, the relief sought cannot be obtained from these non-registrant/owner defendants. See, e.g., Van Well Nursery, Inc. v. Mony Life Ins. Co., 421 F. Supp. 2d 1321, 1332 (E.D. Wash. 2006) ("[Section 119 of the Lanham Act] suggests that a complaint for trademark cancellation should proceed against the party who currently owns the trademark") (emphasis in original); Iowa Health System v. Trinity Health Corp., 177 F. Supp. 2d 897 (N.D. Iowa 2001) (finding that "the owner of the . . . mark [is] thus the only proper [defendant on] a claim for cancellation of the mark"); Informix Software, Inc. v. Oracle Corp., 927 F. Supp. 1283, 1286 (N.D. Cal. 1996) ("Thus, the Court finds that an exclusive licensee of a trademark is not a proper defendant in a suit for cancellation of that trademark. Indeed, the owner of the trademark is the only proper defendant.").

jurisdiction over a claim. . . if. . . the district court has dismissed all claims over which it has original jurisdiction."); Carnegie-Mellon Univ. v. Cohill, 484 U.S. 343, 350 n.7 (1988) ("[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors . . . will point toward declining to exercise jurisdiction over the remaining state-law claims."); see, e.g., Castiglione v. Papa, 2011 U.S. App. LEXIS 10517, at *6-7 (2d Cir. N.Y. May 23, 2011). Plaintiffs' state law misappropriation claim is therefore dismissed without prejudice.

## CONCLUSION

The Defendants' motions to dismiss are GRANTED. The Third Amended Complaint is DISMISSED.

Dated: New York, New York
September 1, 2011

SO ORDERED:

*[signature]*
GEORGE B. DANIELS
United States District Judge